CHARLES E. BROHAWN & BROS., INC.
*v.* BOARD OF TRUSTEES OF
CHESAPEAKE COLLEGE

[No. 272, September Term, 1972.]

*Decided May 29, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, McWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Douglas G. Worrall*, with whom were *William B. Somerville* and *Smith, Somerville & Case* and *William D. Gould* on the brief, for appellant.

No brief filed on behalf of appellee.

DIGGES, J., delivered the opinion of the Court.

In this case Charles E. Brohawn & Bros., Inc., sued in assumpsit the Board of Trustees of Chesapeake College, appellee, a regional community college located near Wye Mills, Maryland. The declaration was filed in the Circuit Court for Talbot County and contains, in addition to the common counts for work and material provided, a special count alleging a contract to construct certain buildings for the college, full performance by Brohawn and the refusal of the Trustees to pay the agreed upon price. The Trustees, as authorized by Maryland Rule 323 b, responded with a motion raising preliminary objections which interposed the defense of sovereign immunity. The trial court, following a hearing on that motion, concluded that the Board of Trustees, as an agency of the State, was cloaked with the sovereign's attendant immunity from suit and, as this had not been waived, accordingly, entered judgment in favor of the Trustees for costs.[1]

The doctrine of sovereign immunity exists under the common law of Maryland. By this doctrine, a litigant is precluded from asserting an otherwise meritorious cause of

---

1. Though this suit also involves a claim against another party which has not been terminated, at the direction of the trial court, a final appealable judgment was expressly entered as authorized by Maryland Rule 605 a.

action against this sovereign State or one of its agencies which has inherited its sovereign attributes, unless expressly waived by statute or by a necessary inference from such a legislative enactment.[2] *Godwin v. County Comm'rs of St. Mary's Co.*, 256 Md. 326, 260 A. 2d 295 (1970); *Dunne v. State*, 162 Md. 274, 280, 159 A. 751 (1932). And in the absence of statutory authorization. neither counsel for the State nor any of its agencies may, "either by affirmative action or by failure to plead the defense, waive the defense of governmental immunity . . . ." *Bd. of Education v. Alcrymat Corp.*, 258 Md. 508, 266 A. 2d 349 (1970). The doctrine of sovereign immunity or, as it is often alternatively referred to, governmental immunity, was before this Court in *University of Maryland v. Maas*, 173 Md. 554, 197 A. 123 (1938), where our predecessors reversed a judgment recovered against the University for breach of contract in connection with the construction of a dormitory at College Park. That opinion, after extensively reviewing the prior decisions of this Court, succinctly summed up their holdings by stating: "So it is established that neither in contract nor tort can a suit be maintained against a governmental agency, first, where specific legislative authority has not been given, second, even though such authority is given, if there are no funds available for the satisfaction of the judgement, or no power reposed in the agency for the raising of funds necessary to satisfy a recovery against it." *Id.* at 559

With this backgrourא concerning sovereign or governmental immunity before us, we now turn to an examination of the relationship which exists between this State and the community colleges located within its borders. This is necessary in order to determine whether the Board of Trustees of Chesapeake College inherited the valuable birthright of immunity from suit from the State when it was

2. It is often overlooked by those who advocate the abolition by judicial fiat of the doctrine of sovereign immunity that in Maryland " [t]he right to sue the State was given by the Act of 1786, Ch. 53, but this was afterwards repealed and the right taken away." State v. B.& O. R. R. Co., 34 Md. 344, 374 (1871). This repeal came by Ch. 210, Acts of 1820, and the General Assembly, in the intervening 150 years, has not seen fit to change this position.

created in 1965. We agree with the trial court that it did and will, accordingly, affirm its judgment.

The creation of a system of community colleges in this State was first authorized by the General Assembly in 1961 with the enactment of Chapter 134 of that year's session laws. That Act, now, with amendments, codified in the Maryland Code (1957, 1969 Repl. Vol.) as Art. 77A, §§ 1 and 4 *et seq.*, permits the local board of education of any county, with the approval of the State Superintendent of Schools (after July 1, 1969 the approval must be that of the State Board for Community Colleges), to establish and maintain a community college in a county with the "governmental corporation" so created being administered by the local "board of education [constituting] a board of trustees . . . ." Later in 1965, no doubt, at least in part, to satisfy a desire of Talbot, Caroline, Kent and Queen Anne's Counties to jointly establish a community college (Chesapeake College) which would primarily serve the citizens of those counties, the General Assembly enacted Chapter 582, now codified with minor amendments as Code (1957, 1969 Repl. Vol.), Art. 77A, §§ 2, 4 (b), 6, and 7. Section 2, with the minor amendments which are of no significance here, reads:

"§ 2. Regional community colleges.

(a) *Authority to establish.* — The State Board of Education until June 30, 1969, and thereafter the State Board for Community Colleges may establish regional community colleges for two or more counties or for one or more counties and Baltimore City, subject, however, to the prior approval of the county commissioners, county councils, or city council, as the case may be, for each county (or Baltimore City) to comprise the region and to support such regional community college.

(b) *Board of trustees — Generally.* — In the event that pursuant to subsection (a) hereof, a regional community college is created for two or more counties or for one or more counties and Baltimore City, the members of the board of

168

·education (or as to Baltimore City, the board of school commissioners) of each county (or Baltimore City) comprising the region and supporting said regional community college shall constitute a board of trustees for the purpose of administration over said regional community college and said board of trustees shall possess all of those powers enumerated in § 1 of this subtitle. Whenever the participating counties have different numbers of members on their respective boards of education, representation on the board of trustees of the regional community college for any county shall be limited to the number of members on the smallest county school board, and whenever any county's membership on the board of trustees is less than the number of its school board members, the board of education for such county shall elect from its membership those who shall serve on the board of trustees, provided that the maximum number of members on the board of trustees shall never exceed twelve, with an equal number from each participating county.

(c) *Same — Chairman; secretary and treasurer.* — The board of trustees of each regional community college shall annually elect a chairman from among its membership and shall select some qualified person or persons as secretary of the board and treasurer of the board.

(d) *Same — Ex officio members.* — The county superintendent of schools (or, as to Baltimore City, the superintendent of public instruction) of each political subdivision within the region shall be ex officio members and shall attend all meetings of the board of trustees of the regional community college but shall not vote.

(e) *Applicability of subtitle provisions.* — Except to the extent that they are inconsistent with the provisions of this section, all other provisions of

this subtitle shall apply to regional community colleges."

In 1965, the same year this legislation was enacted, Chesapeake College was established as a regional community college by the State Board of Education upon obtaining the prior approval of the respective Board of County Commissioners for each of the four Eastern Shore Counties of Talbot, Caroline, Kent and Queen Anne's. Shortly thereafter, the contract for construction of the original college buildings, which is the subject of this litigation, was entered into by the parties to this suit.

There can be no doubt, as Judge Urner observed for this Court more than forty years ago, that

"public education is a highly important interest of the State government. In the promotion of that interest the State is acting through an agency which the Legislature created for that purpose and to which broad administrative powers have been delegated. In performing its functions the [Board of Trustees] is representing and asserting the State's authority. As a governmental agency of the State it shares the immunity from suit to which the State itself is entitled, in the absence of any legislative waiver of that exemption." *Williams v. Fitzhugh*, 147 Md. 384, 386, 128 A. 137 (1925).

The appellant here does not seriously question the soundness of this statement but argues that since the Board of Education in the several counties of the State were granted the authority to establish and administer community colleges located in its county, the college corporate entity is but an agency of the county Board of Education. Relying principally on the decision of the United States Supreme Court in *Keifer & Keifer v. Reconstruction Fin. Corp.*, 306 U. S. 381, 59 S. Ct. 516, 83 L. Ed. 784 (1939), appellant says, that since sovereign immunity from suit of the local county **Boards of Education has been waived by the General** Assembly with the enactment of Art. 77, § 38 of the Code (1957, 1969 Repl. Vol.), which provided that a county Board

of Education can both sue and be sued, it necessarily follows that so can the Board of Trustees of Chesapeake College, as it is but a creation of the local Boards. The facts in *Keifer* indicate that Congress had created the Reconstruction Finance Corporation with the power to sue and be sued and later authorized it to create regional agricultural credit corporations to aid it in carrying out its functions. But, this later authorization was silent as to whether these regional corporations should enjoy immunity from suit. When one of the regional corporations was sued, it argued that it was immune. The Supreme Court rejected this claim because it determined that the congressional intent, as determined from its prior practices, was not to grant immunity. The Supreme Court reasoned that as Reconstruction was the parent of the regional corporation and Congress had waived Reconstruction's immunity it naturally assumed that "the general corporate powers to which it had given particularity in the original statute establishing Reconstruction would flow automatically to the regionals from their source of being." And, the "characteristic energies for corporate enterprise," including the power to sue and be sued, "would now radiate through Reconstruction to regional." From this reasoning in *Keifer*, appellant argues that the Board of Trustees of Chesapeake College, as an offspring of the county Boards of Education, has inherited their waiver of immunity. Even if we were tempted to accept the validity of that argument as it pertains to community colleges established by the board of education of a county and with that *Board of Education* installed as the college's Board of Trustees, in accordance with Art. 77A, § 1, a point we specifically do not decide here, appellant's cause would not be aided. We say this because that reasoning falters when it is applied to a regional community college established by the State Board of Education under Art. 77A, § 2, as distinguished from a single county community college established by a county Board of Education under § 1 of that Article. The authority to establish a regional community college springs from the legislative enactment of § 2 and such a college is not brought into being by any action of a county Board of Education. It can only be established by the

will of the State Board of Education (now, since July 1, 1969 by the State Board for Community Colleges) and its obtention of the prior approval of the county commissioners of the counties which are to comprise the region.[3] We believe it is quite significant that neither in Art. 77A, § 2 *et seq.* which authorize the State Board of Education to establish regional community colleges, nor in Art. 77, §§ 2-22 which created and described the functions of the State Board of Education, nor in Art. 77A, § 8 which establishes the State Board of Community Colleges and outlines its powers, has the General Assembly expressly or by implication, with but one exception, indicated an intention to waive the sovereign immunity which attaches to these institutions.

This only exception came about with the enactment at the 1971 session of the General Assembly of Chapter 549 which, as amended, is now codified as Code (1957, 1969 Repl. Vol., 1972 Cum. Supp.), Art. 77A, § 10A. This law provides that the board of trustees of a community or regional community college:

> "shall carry comprehensive liability insurance to protect the board, its agents and employees, and any agents and employees of any college under its jurisdiction. . . .

> \* \* \*

> Nothing in this section shall be construed as affecting the right of the various boards of trustees, on their own behalf, from raising the defense of sovereign immunity to any amount in excess of the limit of the policy or in excess of one hundred thousand dollars ($100,000) in the case of self-insurance."

It is clear to us that this is only a partial waiver of sovereign immunity and has no application to this case. It affects only

---

**3.** Prior approval of the county commissioners of counties located in the region is obviously required because under Code (1957, 1969 Repl. Vol.), Art. 77A, § 7, a regional community college is financed for its current expenses on the basis of 45% from the State, 30% from the counties for which it is established on a pro rata basis determined by the ratio of the full time student population from each county and 25% from fees and charges required from students of the college.

those claims which would be covered by such a "comprehensive liability insurance" policy and, to the extent of the policy, provides a fund from which these can be paid. Furthermore, we do not think that this result is altered by the fact that, by statute, the membership of the Board of Trustees of Chesapeake College is derived from the members of the boards of education of the four counties comprising the region.[4] There may be some significance in the fact that Art. 77A, § 1 provides that the board of education shall constitute the board of trustees for a single county community college, whereas under § 2, authorizing the creation of regional community colleges, *members* of the board, but not necessarily all, constitute the regional community college board of trustees. But, we conclude that when there is a regional community college the members of the board of education in the region, in effect, have two hats and, even though they both fit, when a trustee of Chesapeake College wears his college hat he is not acting for the board of education of which he also happens to be a member. As we see it, the Legislature in giving the member a dual responsibility was merely adopting a convenient method of filling two positions and by this in no way demonstrated an intention to place control of the regional community college in the several county Boards of Education acting in that capacity. In other words, each agency is a separate and independent body politic, although they happen to be directed by largely the same personnel and, as both are concerned with education, have much in common.

We specifically hold that such power to sue and be sued, which the county Boards of Education obtained through the enactment of Art. 77, § 38, does not devolve upon the Board of Trustees of Chesapeake College and the judgment of the trial court will, therefore, have to be affirmed.

*Judgment affirmed.*
*Costs to be paid by the appellant.*

---

4. Under Art. 77A, § 3, a regional board of trustees created by § 2 may divest itself of responsibility for management and control of the regional community college by a request addressed to the Governor to appoint a new board of trustees.