529 F.2d 51
 Jean LINKENHOKER et al., Appellants,
v.
Caspar WEINBERGER, Secretary Department of Health, Education
and Welfare, and David T. Mason, Secretary Maryland
Department of Employment and Social Services, Individually
and in their official capacities, Appellees.
 No. 75--1293.
 United States Court of Appeals,
Fourth Circuit.
 Argued Sept. 10, 1975.
Decided Nov. 3, 1975.
 
 C. Christopher Brown, Baltimore, Md., for appellants.
 John K. Anderson, Asst. Atty. Gen. of Md. (Francis B. Burch, Atty. Gen. of Md., and Joel J. Rabin, Asst. Atty. Gen. of Md., on brief), for appellee Batterton.
 Sarah Willis Wilcox, Atty., Dept. of Health, Education and Welfare (Jervis S. Finney, U.S. Atty., John W. Sheldon, Asst. U.S. Atty., and Galen D. Powers, Asst. Gen. Counsel, Dept. of Health, Education and Welfare, on brief), for appellee Weinberger.
 Before WINTER, RUSSELL and WIDENER, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 Plaintiffs, participants in public service employment programs established pursuant to 42 U.S.C. § 632(b), sought to compel the Secretary of H.E.W. and the Secretary of the Maryland Department of Employment and Social Services to disregard their earnings from public service employment in computing benefits under the A.F.D.C. program. They claimed that such a result was mandated by 42 U.S.C. § 602(a)(19)(D) and the equal protection clause. The district court granted defendants' motion for summary judgment, Linkenhoker v. Weinberger, 387 F.Supp. 449 (D.Md.1975),* and this appeal followed. We think that plaintiffs' case is moot. We therefore vacate the judgment and remand the case with a direction to dismiss it as moot.
 
 I.
 
 2
 Although plaintiffs were participants in public service employment programs when they filed their complaint and when their case was tried in the district court, counsel informed us at oral argument that all named plaintiffs have since ceased to participate in such employment. Since a request for class certification was previously withdrawn, the case is now moot as to the requested declaratory and injunctive relief, unless it can be fitted into an exception to the mootness rule or the Maryland Attorney General has effectively waived Maryland's immunity for past benefits.
 
 II.
 
 3
 Plaintiffs contend that we should decide the issue presented because it is one 'capable of repetition, yet evading review.' Southern Pac. Terminal Co. v. I.C.C., 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). However, application of this exception to the usual rules governing mootness is predicated on a 'predictable effect on the very plaintiff before the court . . ..' 13 C. Wright and A. Miller, Federal Practice and Procedure, § 3533 at 286--87 (1975). Compare DeFunis v. Odegaard, 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974) (case moot where plaintiff would never again have to seek admission to law school) with Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (case not moot where plaintiff might again become pregnant and seek an abortion). See also Rowley v. McMillan, 502 F.2d 1326, 1334 (4 Cir. 1974) (case not moot where plaintiffs or other class member might again seek admission to presidential appearances to exercise first amendment rights).
 
 
 4
 We think that this case is more like DeFunis than Roe. It seems unlikely that any of the named plaintiffs will ever again enter public service employment, and there are not present other class members to save the action. Furthermore, this is not an exceptional situation where no plaintiff could obtain appellate review before leaving the program. Cf. Roe v. Wade, supra, 410 U.S. at 125, 93 S.Ct. 705. The statute, 42 U.S.C. § 633(e)(2)(A), apparently contemplates that individuals remain in public service employment for three years. Surely some will stay long enough to reach this court, especially since disposition in the district court of any subsequent case raising the same issue should now be speedy.
 
 
 5
 We hold that plaintiffs' case is not one constituting an exception to the mootness rule.
 
 III.
 
 6
 Plaintiffs did not initially ask for a retroactive award of benefits, undoubtedly recognizing that any such relief against the state, which administers A.F.D.C., was foreclosed by Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). However, in an effort to keep the case alive, the Attorney General of Maryland, through his assistant, has represented to us that the state waives its eleventh amendment immunity as to any entitlement due the named plaintiffs for the period subsequent to the filing of the complaint.
 
 
 7
 A state may waive its immunity from suit in federal court, Clark v. Barnard, 108 U.S. 436, 447, 2 S.Ct. 878, 27 L.Ed. 780 (1883); the question here is whether the attorney general has made an effective waiver on behalf of Maryland. If he has not, this court is without jurisdiction to make a retroactive monetary award.
 
 
 8
 In Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945), the Supreme Court held that a state attorney general could not waive the state's eleventh amendment immunity unless he had been properly authorized by state law to so do. Finding nothing in the Indiana Constitution or statutes specifically consenting to suits against the state in federal court, the Court considered whether the general powers of the attorney general were sufficient to enable him to give the necessary consent:
 
 
 9
 (We do not) think that any of the general or special powers conferred by statute on the Indiana attorney general to appear and defend actions brought against the state or its officials can be deemed to confer on that state officer power to consent to suit against the state in courts when the state has not consented to suit. Id., at 468, 65 S.Ct. at 352.
 
 
 10
 The principle of Ford Motor Co. has prevailed both before and after its decision. See, e.g., Williams v. Eaton, 443 F.2d 422, 428 (10 Cir. 1971); O'Connor v. Slaker, 22 F.2d 147, 150--53 (8 Cir. 1927), appeal dismissed, 278 U.S. 188, 49 S.Ct. 158, 73 L.Ed. 258 (1929). Compare Parden v. Terminal Ry. of Alabama State Docks Dept., 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964) (implied consent to suit found as a matter of federal law when state entered an area where Congress had made amenability to suit a condition of entry) with Edelman v. Jordan, supra, 415 U.S. at 673--674, 94 S.Ct. at 1361 ('mere fact that a State participates in a program through which the Federal Government provides assistance for the operation by the State of a system of public aid is not sufficient to establish consent on the part of the State to be sued in the federal courts,' distinguishing Parden).
 
 
 11
 We therefore turn to Maryland law in search of a statute or decision consenting to suits against the state in federal court for retroactive benefits, or expressly conferring authority on the attorney general to give such consent. We keep in mind that consent to suits against the state in its own courts will not waive the bar of the eleventh amendment, Kennecott Copper Corp. v. State Tax Comm'n, 327 U.S. 573, 577, 66 S.Ct. 745, 90 L.Ed. 862 (1946), and that waiver of eleventh amendment immunity may be found only where stated 'by the most express language, or by such overwhelming implication from the text as (will) leave no room for any other reasonable construction.' Murray v. Wilson Distilling Co., 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909), cited with approval in Edelman v. Jordan, supra, 415 U.S. at 673, 94 S.Ct. 1347.
 
 
 12
 In Charles E. Brohawn & Bros., Inc. v. Board of Trustees of Chesapeake College, 269 Md. 164, 304 A.2d 819 (1973), the Maryland Court of Appeals authoritatively summarized that state's law on the waiver of immunity from suit:
 
 
 13
 The doctrine of sovereign immunity exists under the common law of Maryland. By this doctrine, a litigant is precluded from asserting an otherwise meritorious cause of action against this sovereign State or one of its agencies which has inherited its sovereign attributes, unless expressly waived by statute or by a necessary inference from such a legislative enactment. And in the absence of statutory authorization, neither counsel for the State nor any of its agencies may, 'either by affirmative action or by failure to plead the defense, waive the defense of governmental immunity. . . .' 304 A.2d at 820 (citations omitted) (emphasis added).
 
 
 14
 The Maryland legislature has not authorized suits against that state:
 
 
 15
 'It is often overlooked by those who advocate the abolition by judicial fiat of the doctrine of sovereign immunity that in Maryland '(t)he right to sue the State was given by the Act of 1786, Ch. 53, but this was afterwards repealed and the right taken away.' State v. B. & O. R.R. Co., 34 Md. 344, 374 (1871). This repeal came by Ch. 210, Acts of 1820, and the General Assembly, in the intervening 150 years, has not seen fit to change this position. Charles E. Brohawn, supra, 304 A.2d at 820 n.2.
 
 
 16
 That the legislature has not changed its position is made even more evident by Maryland Code, Art. 32A, § 12H (1974 Supp.). When, in 1973, the general assembly enacted a statute empowering the attorney general to defend suits against state officials, it included this limitation:
 
 
 17
 (a) The consent of the Attorney General to defend actions or proceedings against state officers and employees may not be construed to deprive any agency, board, commission, department, officer, or institution, or any employee thereof, of its sovereign immunity as it existed prior to July 1, 1973.
 
 
 18
 Since the Maryland courts and legislature have been so explicit in denying the attorney general the power to consent to suits against the state in its own courts, a fortiori he may not consent to suits against the state in federal court which would otherwise be barred by the eleventh amendment. We thus have no jurisdiction to hear plaintiffs' claims for retroactive benefits, Edelman v. Jordan, supra.
 
 
 19
 Plaintiffs have no claim for past benefits that we have jurisdiction to recognize. Their case is thus not saved from mootness by any claim for past benefits.
 
 
 20
 The judgment of the district court is vacated and the case is remanded with instructions that it be dismissed as moot.
 
 
 21
 Vacated and remanded.
 
 
 
 *
 The decision of the district court was in accord with Betts v. Weinberger, 391 F.Supp. 1122 (D.Vt., March 24, 1975) (three-judge court), and contrary to Dunbar v. Weinberger (D.Mass., August 7, 1974). The decision of the district court was followed in Ray v. Weinberger (E.D.Pa., March 11, 1975). We express no view on the merits