**AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL–CIO, Virginia Alliance of State Employees, et al., Plaintiffs,**

v.

**The COMMONWEALTH OF VIRGINIA, Defendant.**

Civil Action Nos. 94–097–A, 94–153–A, 94–165–A, 95–005–A to 95–008–A, 95–026–A, 95–027–A, 95–057–A to 95–060–A, 95–098–A, 95–138–A, 95–209–A, 96–009–A to 96–011–A, 96–013–A and 96–111–A.

United States District Court,
W.D. Virginia,
Abingdon Division.

Dec. 13, 1996.

---

Jay Joseph Levit, John Bertram Mann, Richmond, VA, and John C. Dempsey, Washington, DC, for Plaintiff.

James S. Gilmore, III, Mark Ralph Davis, Gregory E. Lucyk, Catherine Currin Hammond, George Walerian Chabalewski, Office of the Attorney General, Richmond, VA, for Defendant.

## ·*MEMORANDUM OPINION*

WILSON, District Judge.

Plaintiffs, employees of twenty-one Virginia prisons and mental health hospitals bring these actions against the Commonwealth of Virginia ("Commonwealth") for violations of the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. §§ 201–219.[1] The Commonwealth has moved to dismiss pursuant to

---

1. The American Federation of State, County and Municipal Employees, AFL–CIO, Virginia Alliance of State Employees ("VASE") previously was a named plaintiff in each action. In an earlier opinion the court found that VASE was not a proper plaintiff under FLSA, and the court dismissed it from the suit.

Federal Rule of Civil Procedure 12 for lack of subject matter jurisdiction, claiming it has immunity under the Eleventh Amendment to the United States Constitution. Plaintiffs counter that Congress passed the FLSA pursuant to its authority under the Fourteenth Amendment and that Congress properly abrogated the state's Eleventh Amendment immunity. Alternatively, plaintiffs contend that the Commonwealth waived or may have waived its Eleventh Amendment immunity, and they seek to engage in discovery to uncover evidence of that waiver. The court finds that it is without jurisdiction and that further discovery is unwarranted. Accordingly, the court grants the motion to dismiss.

## I. Background

Each action challenges the compensation policies of a specific Virginia prison or mental health facility,[2] and each individual plaintiff in each action is employed by the specified facility. Plaintiffs allege that the Commonwealth deprived them of compensation in violation of the FLSA by (1) under-crediting or not counting certain hours worked for purposes of overtime compensation, (2) unilaterally implementing an overtime pay system that requires employees to accept compensatory time in lieu of monetary compensation, (3) denying overtime compensation to employees deemed "exempt" from FLSA requirements, and (4) generally failing to provide employees with the rights and protections of the FLSA. Because the allegations in each case are identical, the court has consolidated them.

The Commonwealth originally moved to dismiss on the ground that the Eleventh Amendment to the United States Constitution bars these actions. In a Memorandum Opinion and Order of July 10, 1995 this court denied the Commonwealth's motion, finding that Congress had the power under the Commerce Clause to abrogate a state's Eleventh Amendment immunity and that, in enacting the FLSA, Congress had in fact abrogated that immunity. Since the court entered that opinion, however, the United States Supreme Court decided *Seminole Tribe of Florida v. Florida,* —— U.S. ——, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). *Seminole Tribe* overruled *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), the case which established Congress' power under the Commerce Clause to abrogate Eleventh Amendment immunity. In light of *Seminole Tribe,* the Commonwealth filed a renewed motion to dismiss.

Plaintiffs oppose the Commonwealth's motion. They maintain first that *Seminole Tribe* is not controlling because Congress enacted the FLSA, in part, pursuant to Section 5 of the Fourteenth Amendment; second, that the Commonwealth waived its Eleventh Amendment immunity by participating in federally regulated activity; and, third, that the Commonwealth may have waived its immunity by participating in federal programs that require such a waiver and that the court should permit the plaintiffs to engage in discovery on that issue. The court first turns to the applicability of *Seminole Tribe* and then to the waiver and discovery issues.

## II. Applicability and Impact of *Seminole Tribe*

The Eleventh Amendment generally deprives the federal courts of jurisdiction to adjudicate suits against a state by its citizens or citizens of other states.[3] *See Port Author-*

---

**2.** The following institutions are involved: Bland Correctional Center, Marion Correctional Center, Staunton Correctional Center, Petersburg State Mental Facility, Powhatan Correctional Center, Nottoway Correctional Center, Deep Meadow Correctional Center, Greenville Correctional Center, St. Bride's Correctional Center, Mecklenburg Correctional Center, Alexandria Correctional Facility, Southampton Correctional Center, Brunswick Correctional Facility, James River Correctional Center, Catawba Correctional Center, Augusta Correctional Center, Deerfield Correctional Center, Virginia Correctional Center for Women, Indian Creek Correctional Center, Western State Hospital, and the Northern Virginia Training Center for the Mentally Retarded.

**3.** The Eleventh Amendment to the United States Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

*ity Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 304, 110 S.Ct. 1868, 1872, 109 L.Ed.2d 264 (1990). The plaintiffs in these consolidated actions are Virginia citizens who seek money damages from the Commonwealth of Virginia. The Commonwealth contends that the Eleventh Amendment bars these actions, while plaintiffs maintain that, under the FLSA, Congress properly abrogated the state's Eleventh Amendment immunity. The court finds that Congress intended, but lacked the constitutional authority, to abrogate that immunity.

 The Supreme Court has held that Congress has the power, in limited circumstances, to abrogate a state's Eleventh Amendment immunity. In *Seminole Tribe*, the Court reiterated the two-part test to determine whether Congress has done so. First, Congress must unequivocally express its intent to abrogate that immunity and, second, Congress must have the constitutional power to abrogate it. *Seminole Tribe*, —— U.S. at ——, 116 S.Ct. at 1118 (citing *Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423, 425–26, 88 L.Ed.2d 371 (1985)). This court has previously held that Congress, in enacting the FLSA, unequivocally expressed its intent to abrogate state sovereign immunity. *See AFSCME v. Virginia*, Civil Action No. 94–097–A (W.D.Va. July 10, 1995). The remaining question is whether, in light of *Seminole Tribe*, Congress had the constitutional authority to do so.

Prior to *Seminole Tribe*, the Supreme Court identified two sources of constitutional authority empowering Congress to abrogate a state's Eleventh Amendment immunity. The first was Section 5 of the Fourteenth Amendment, which provides that "Congress shall have the power to enforce, by appropriate legislation, the provisions of [that amendment]." *See Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985) (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976)). The second was the Interstate Commerce Clause, U.S. Const. art I, § 8, cl. 3. *See Union Gas Co.*, 491 U.S. at 14–16, 109 S.Ct. at 2281–83. (plurality opinion). In *Seminole Tribe*, however, the Supreme Court expressly overruled *Union Gas*

and instead held that the Commerce Clause does not give Congress power to abrogate a state's Eleventh Amendment immunity. *Seminole Tribe*, —— U.S. at —— –——, 116 S.Ct. at 1131–32. *Seminole Tribe's* holding leaves Section 5 of the Fourteenth Amendment as the only valid source of congressional power to abrogate. It follows that, absent a waiver, the Eleventh Amendment bars this action if the Commerce Clause alone supports the FLSA.

Plaintiffs contend that the 1974 amendments to the FLSA were intended to end invidious discrimination against state and local government workers, similar to Title VII civil rights legislation. Thus, according to plaintiffs, Congress acted pursuant to the Fourteenth Amendment. Congress' own words *and* the absence of any rational connection to the Fourteenth Amendment, however, tell a different story. In enacting the FLSA, Congress specifically stated its source of authority as the "power to regulate commerce among the several States...." 29 U.S.C.A. § 202(b) (West 1978). Congress again emphasized its authority under the Commerce Clause in passing the 1974 amendments to the FLSA, and mentioned no Fourteenth Amendment purpose either expressly or by implication, H.R.Rep. No. 93–913, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 2811, 2812, and no Fourteenth Amendment purpose appears. Moreover, as the Sixth Circuit has noted, in order for a court to infer that Congress passed legislation to enforce a Fourteenth Amendment right, there must be a "sufficiently strong logical connection between the aims of the act—to increase the wages and shorten the hours of certain employees—and central, obvious Fourteenth Amendment concerns" of race, sex or national origin discrimination. *Wilson–Jones v. Caviness*, 99 F.3d 203, 210 (6th Cir.1996). In this court's view, the plaintiffs' generalized theory that Congress intended the FLSA to end "discrimination" amounts to an unwarranted expansion of the scope of the Fourteenth Amendment jurisprudence to proscribe economic distinctions not related to race, sex or national origin. Simply put, the court finds no logical connection between the aims of the FLSA and "central, obvious Fourteenth Amendment concerns." *Id.* Thus, the court finds plain-

tiffs' argument unpersuasive and joins other courts that have found the FLSA is based on the Commerce Clause and has no support under the Fourteenth Amendment. *See, e.g., Wilson–Jones,* 99 F.3d at 210; *Long v. Constantine,* No. 89–CV–887, 1996 WL 679721 (N.D.N.Y. Nov. 12, 1996); *Rehberg v. Dep't of Public Safety,* 946 F.Supp. 741 (S.D.Iowa 1996); *Chauvin v. State of Louisiana and Dep't of Wildlife and Fisheries,* 937 F.Supp. 567 (E.D.La.1996); *Close v. New York,* No. 94–CV–0906, 1996 WL 481550 (N.D.N.Y. August 19, 1996); *Arnold v. Arkansas,* No. LR–C–94–177, —— F.Supp. —— [1996 WL 805075] (E.D.Ark. July 10, 1996); *Adams v. Kansas,* 934 F.Supp. 371 (D.Kan.1996); *Raper v. Iowa,* 940 F.Supp. 1421 (S.D.Iowa 1996); *Moad v. Arkansas State Police,* No. LR–C–94–450 (E.D.Ark. May 15, 1996). Accordingly, this court is without jurisdiction to hear these cases unless the Commonwealth has waived its sovereign immunity. The court now turns to that issue.

### III. Waiver of Eleventh Amendment Immunity and Discovery

■ Even if Congress is without power to abrogate Eleventh Amendment immunity, a state may waive immunity and consent to suit. *See Atascadero,* 473 U.S. at 238, 105 S.Ct. at 3145. A state may waive its Eleventh Amendment immunity either expressly or implicitly. Plaintiffs argue that the Commonwealth has implicitly waived or may have implicitly waived its immunity. Although plaintiffs' waiver arguments, at times, shade confusingly one into the other, the court believes those arguments may be reduced to the following: first, the Commonwealth implicitly waived its immunity by engaging in federally regulated activity; and second, dismissal is premature because the Commonwealth may have implicitly waived its immunity by participating in a federal program in which Congress expressly conditioned participation on consent to suit in federal court, and the court should permit discovery to determine whether there has been such a waiver.

### A.

■ Plaintiffs first allege that the Commonwealth implicitly waived its immunity by participating in federally regulated activity. In passing the FLSA, Congress expressly permitted workers to enforce their rights in federal court. Under plaintiffs' analysis, when the Commonwealth continued to operate prisons and mental hospitals and to employ individuals to work in these facilities knowing that Congress intended the FLSA to apply to the states, it was in effect waiving its Eleventh Amendment immunity. *See Parden v. Terminal Ry. of Ala. State Docks Dep't,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964); *Carey v. White,* 407 F.Supp. 121 (D.Del.1976). The court rejects the plaintiffs' reasoning. The Eleventh Amendment precludes Congress from using Article I to expand Article III, and congressional intent, no matter how clearly stated, is insufficient to bootstrap Article III jurisdiction. If the plaintiffs' reasoning were followed, Congress could, despite the Eleventh Amendment's prohibition, authorize a citizen to sue the Commonwealth in federal court simply because the Commonwealth engaged in commerce. *Seminole Tribe,* however, essentially rejected that reasoning:

> In overruling *Union Gas* today, we reconfirm that the background principle of state sovereign immunity embodied in the Eleventh Amendment is not so ephemeral as to dissipate when the subject of the suit is an area, like the regulation of Indian commerce, that is under the exclusive control of the Federal Government. Even when the Constitution vests in Congress complete law-making authority over a particular area, the Eleventh Amendment prevents congressional authorization of suits by private parties against unconsenting States. The Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction.

*Seminole Tribe,* —— U.S. at —— – ——, 116 S.Ct. at 1131–1132. In sum, *Seminole Tribe* makes two things clear. First, Congress must unequivocally express its intent to abrogate Eleventh Amendment immunity—which it has done; and, second, Congress must have acted pursuant to a valid exercise of power—which it has not done. If the court were to accept plaintiffs' implied waiver argument, it would be doing indirectly that which Congress could not do directly. The court, therefore, rejects plaintiffs' argument.

**B.**

■ Plaintiffs next contend that discovery might possibly produce evidence that the Commonwealth waived its Eleventh Amendment immunity by participating in a federal program in which Congress explicitly conditioned participation on consent to suit in federal court. Since plaintiffs have made no colorable showing of waiver, the court will not permit discovery on this issue.

■ The Supreme Court has held that neither participation in a federal program nor the receipt of federal funds is sufficient to establish a waiver, *see Atascadero*, 473 U.S. at 246–47, 105 S.Ct. at 3149–50; *Edelman v. Jordan*, 415 U.S. 651, 673–74, 94 S.Ct. 1347, 1360–61, 39 L.Ed.2d 662 (1974), even if the state agrees to comply with applicable federal law in administering that program or disbursing the funds. *See Florida Dep't of Health and Rehabilitative Servs. v. Florida Nursing Home Ass'n*, 450 U.S. 147,

150, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132 (1981). In *Florida Dep't of Health*, the state agreed to "recognize and abide by all State and Federal Laws, Regulations, and Guidelines applicable to participation in and administration of" certain Medicaid programs. *Id.* at 149, 101 S.Ct. at 1034. The Court noted that "the fact that the [state] agreed explicitly to obey federal law in administering the program can hardly be deemed an express waiver of Eleventh Amendment immunity. This agreement merely stated a customary condition for any participation in a federal program...." *Id.* at 150, 101 S.Ct. at 1034. Thus, even if discovery were to reveal participation in a federal program in which the Commonwealth agreed to comply with the FLSA, that agreement and participation would not constitute a waiver unless the Commonwealth also agreed to submit to suit in federal court.[4]

Moreover, plaintiffs have not even been able to identify a specific program in which the Commonwealth participates that requires

---

**4.** Plaintiffs allege that the Virginia General Assembly has granted certain state officials the power to enter into government contracts and to comply with conditions of federal programs and that this authority connotes the power to waive the Commonwealth's Eleventh Amendment immunity. The court agrees with the Commonwealth that no official in the Department of Corrections, Department of Mental Health or Department of Employment and Training has the authority, under Virginia law, to waive the Commonwealth's Eleventh Amendment immunity, and thus the conduct or agreements of those officials could not establish a valid waiver.

Plaintiffs maintain that the Department of Corrections is authorized to waive the Commonwealth's immunity to suit in federal court. In support of this proposition, plaintiffs cite Va. Code § 53.1–10(4) & (5) (Michie 1994), which authorizes the Director of the Department of Corrections to

make and' enter into all contracts and agreements necessary or incidental to the performance of the Department's duties and the execution of its powers under this title, including, but not limited to, contracts with the United States, other states, and agencies and governmental subdivisions of this Commonwealth, ... consistent with applicable standards and goals of the Board; [and]

To accept, hold and enjoy gifts, donations and bequests on behalf of the Department from the United States government and agencies and instrumentalities thereof, and any other source, subject to the approval of the Gover-

nor. To these ends, the Director shall have the power to comply with such conditions and execute such agreements as may be necessary, convenient or desirable, consistent with applicable standards and goals of the Board.

Plaintiffs also point to other similar statutory provisions involving other state officials. Specifically, they cite Va.Code § 2.1–424(A)(3), which gives the Department of General Services the authority to accept grants from the federal government and to "comply with such conditions and execute such agreements as may be necessary," and Va.Code § 2.1–114.4(B), which gives the Department of Personnel and Training the same powers.

State officials can waive their state's immunity under the Eleventh Amendment only if specifically authorized under the constitution, statutes, or decisions of the state. *See e.g., Ford Motor Co. v. Dep't of Treas. of the State of Indiana*, 323 U.S. 459, 466–70, 65 S.Ct. 347, 351–53, 89 L.Ed. 389 (1945); *Estate of Porter v. Illinois*, 36 F.3d 684, 690 (7th Cir.1994); *Silver v. Baggiano*, 804 F.2d 1211, 1214 (11th Cir.1986); *Dagnall v. Gegenheimer*, 631 F.2d 1195, 1196 (5th Cir.1980); *Linkenhoker v. Weinberger*, 529 F.2d 51, 53 (4th Cir.1975). The question of whether a particular state official or department has the authority to waive Eleventh Amendment immunity is one of state law. *See Ford Motor Co.*, 323 U.S. at 467, 65 S.Ct. at 352 ("The issue thus becomes one of their power under state law to [waive]."); *Porter*, 36 F.3d at 691 (applying Illinois law); *Linkenhoker*, 529 F.2d at 53 (applying Maryland law). Accordingly, the court must look to Virginia stat-

**444**

such a waiver. Consigned to a theory without facts, plaintiffs seek to undertake a fishing expedition. Unlike those cases in which the court permits limited discovery in order to develop jurisdictional facts, however, the cases before the court implicate the Commonwealth's sovereign immunity. Since the Eleventh Amendment "serves to avoid 'the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties,'" *Seminole Tribe*, —— U.S. at ——, 116 S.Ct. at 1124 (quoting *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146, 113 S.Ct. 684, 689, 121 L.Ed.2d 605 (1993)), the court will not permit discovery without, at least, a colorable showing that the Commonwealth might have waived its Eleventh Amendment immunity and agreed to submit to suit in federal court.[5]

**C.**

**IV. Conclusion**

Based on the foregoing, the court finds that it is without jurisdiction to adjudicate this case and that discovery is unwarranted. Accordingly, defendant's motion to dismiss for lack of Article III jurisdiction is granted.

**FINAL ORDER**

In accordance with the Memorandum Opinion entered this day, it is hereby **ORDERED AND ADJUDGED** that Defendant's motion to dismiss for lack of jurisdiction is **GRANTED,** and these cases are stricken from the docket of the court.

utes and judicial decisions to determine the authority to waive Eleventh Amendment immunity.

Virginia zealously guards its sovereign immunity. *See Messina v. Burden*, 228 Va. 301, 321 S.E.2d 657, 660 (1984) (Sovereign immunity is "alive and well" as a legal doctrine in Virginia.). Virginia courts have "consistently held" that a waiver of sovereign immunity cannot be implied and that statutory language must explicitly and expressly grant consent to suit. *Elizabeth River Tunnel Dist. v. Beecher*, 202 Va. 452, 117 S.E.2d 685, 689 (1961). *See also Board of Supervisors of Warren County v. Virginia Dep't of Social Servs.*, 731 F.Supp. 735 (W.D.Va.1990); *Hinchey v. Ogden*, 226 Va. 234, 307 S.E.2d 891 (1983); *Virginia Bd. of Medicine v. Virginia Physical Therapy Ass'n*, 13 Va.App. 458, 413 S.E.2d 59 (1991), *aff'd*, 245 Va. 125, 427 S.E.2d 183 (1993). The Virginia General Assembly has repeatedly indicated that statutes should not be construed as waiving sovereign immunity. *See, e.g.*, Va.Code §§ 2.1–526.11, 9–194(C), 10.1–1008, 23–50.16:6(12), · 32.1–4, 56–545, 56–573, 58.1–4013(D). Moreover, the Virginia Supreme Court has held that "the power to consent to suit … rests in the legislature." *Beecher*, 117 S.E.2d at 689 (in context of tort action). Given the reticence with which Virginia consents to suit in its *own* courts, this court will not accept a less explicit waiver of Eleventh Amendment immunity in federal court. Consequently, any grant of authority to waive immunity to suit in federal court must be explicit and unambiguous. *Cf. Beecher*, 117 S.E.2d at 689 (holding that a statute

which consents to suits against the state must be explicit and unambiguous). Although the statutes cited by plaintiffs generally authorize certain state officials to participate in federal programs and to comply with conditions placed on that participation, the statutes do not grant authority to consent to suit in federal court. Without that authority, there can be no waiver. *See Barfield v. Blackwood (In re Secretary of the Department of Crime Control and Public Safety)*, 7 F.3d 1140, 1147 (4th Cir.1993), *cert. denied*, 511 U.S. 1109, 114 S.Ct. 2106, 128 L.Ed.2d 667 (1994).

5. The Supreme Court has squarely rejected the notion that the Eleventh Amendment protects the states only against the imposition of liability:

respondent's claim that the Eleventh Amendment confers only protection from liability misunderstands the role of the Amendment in our system of federalism: "The very object and purpose of the 11th Amendment were to prevent the indignity of subjecting a State to the coercive process of. judicial tribunals at the instance of private parties." The Amendment is rooted in a recognition that the States, although a union, maintain certain attributes of sovereignty, including sovereign immunity. It thus accords the States the respect owed them as members of the federation.

*Puerto Rico Aqueduct and Sewer Authority*, 506 U.S. at 146, 113 S.Ct. at 689 (citations omitted) (quoting *In re Ayers*, 123 U.S. 443, 505, 8 S.Ct. 164, 183, 31 L.Ed. 216 (1887)).