Case vacated and remanded by Supreme
Court order filed 5/20/02

PUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

SHEILA K. MONTGOMERY,
Plaintiff-Appellant,

v.

THE STATE OF MARYLAND;
DEPARTMENT OF PUBLIC SAFETY AND
CORRECTIONAL SERVICES, Division of
                                            No. 00-2099

Corrections; ROBERT KUPEC,
Warden; GEORGE KALOROUMAKIS,
Assistant Warden,
Defendants-Appellees.

UNITED STATES OF AMERICA,
Amicus Curiae.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Frederic N. Smalkin, District Judge.
(CA-00-1019)

Argued: May 8, 2001

Decided: September 26, 2001

Before WILKINSON, Chief Judge, and WILKINS and
LUTTIG, Circuit Judges.

_____

Affirmed by published opinion. Chief Judge Wilkinson wrote the
opinion, in which Judge Wilkins and Judge Luttig joined.

_____

## COUNSEL

**ARGUED:** Jonathan Richard Siegel, GEORGE WASHINGTON UNIVERSITY SCHOOL OF LAW, Washington, D.C., for Appellant. Alisa Beth Klein, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Amicus Curiae. Andrew Howard Baida, Solicitor General, Baltimore, Maryland, for Appellees. **ON BRIEF:** Deborah A. Jeon, AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF MARYLAND, Centreville, Maryland; Robin R. Cockey, COCKEY, BRENNAN & MALONEY, Salisbury, Maryland, for Appellant. David W. Ogden, Assistant Attorney General, Lynne A. Battaglia, United States Attorney, Mark B. Stern, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Amicus Curiae. J. Joseph Curran, Jr., Attorney General of Maryland, Scott S. Oakley, Assistant Attorney General, Amanda S. La Forge, Staff Attorney, Baltimore, Maryland, for Appellees.

_____

## OPINION

WILKINSON, Chief Judge:

This case requires us to decide whether the district court properly dismissed plaintiff's suit on sovereign immunity grounds. We affirm the dismissal, but for reasons different from the district court.

I.

Plaintiff Sheila Montgomery worked as an administrative aide to the Warden of Maryland's Eastern Correctional Institute (ECI). In September 1999, Montgomery took extended leave under the Family Medical Leave Act (FMLA) to have a scheduled surgical procedure. During her absence, Montgomery was reassigned to a position as a secretary in the maintenance department. It is undisputed that this new assignment kept her at the same pay grade and increment level within the Maryland State Personnel Management System. It is also undisputed that Montgomery suffered no loss of benefits. Montgomery, however, felt that this transfer amounted to a retaliatory demotion

2

in response to her having taken FMLA leave. She filed suit against the State of Maryland, ECI Warden Robert Kupec, and ECI Assistant Warden George Kaloroumakis. Kupec and Kaloroumakis were sued in both their individual and official capacities.

In response to Montgomery's suit, Maryland filed a motion to dismiss. At first, the state argued both that sovereign immunity barred Montgomery's suit and that Montgomery had failed to state a claim because she was returned to an equivalent position. Before Montgomery replied, however, Maryland withdrew the Eleventh Amendment defense on behalf of all defendants.

Notwithstanding Maryland's withdrawal of the argument, the district court, sua sponte, dismissed Montgomery's suit on sovereign immunity grounds. Noting its "duty not to enforce unconstitutional statutes," the court held that the FMLA did not abrogate Maryland's sovereign immunity. The district court also held that the state's withdrawal of the sovereign immunity defense did not amount to giving consent to be sued in federal court. The court dismissed the complaint against all defendants. Montgomery then filed this appeal.

II.

A.

We first ask whether the district court erred in deciding the sovereign immunity question. In Wisconsin Department of Corrections v. Schacht, 524 U.S. 381 (1998), the Supreme Court discussed whether the Eleventh Amendment defense is one that courts must always address, even sua sponte. In that case, the Court considered whether the presence of one claim subject to Eleventh Amendment immunity deprived the district court of removal jurisdiction over the entire suit or whether federal jurisdiction survived with respect to the remaining claims. Id. at 386. Holding that the presence of a claim barred by the Eleventh Amendment does not destroy removal jurisdiction over the entire suit, the Court noted that the Eleventh Amendment "does not automatically destroy original jurisdiction" because the "State can waive the defense." Id. at 389. Accordingly, the Court reasoned that a district court need not "raise the defect on its own" and that

3

"[u]nless the State raises the matter [i.e., the defense of sovereign immunity], a court can ignore it." Id.

The district court failed to recognize the discretion afforded it by Schacht. To the contrary, the court explained its sua sponte consideration of the Eleventh Amendment issue as being required by its "duty not to enforce unconstitutional statutes." The court would have been well advised, however, not to take up the Eleventh Amendment defense. When a state clearly contemplates the defense of sovereign immunity and then affirmatively and unequivocally decides to withdraw that argument, a district court errs in considering the issue sua sponte. This is true regardless of how the court ultimately rules. The Eleventh Amendment reflects the principle that in a federal system with dual sovereigns, one sovereign must treat the other with a measure of respect. See South Carolina State Ports Authority v. Federal Maritime Commission, 243 F.3d 165, 172 (4th Cir. 2001) ("dual sovereignty posits a relationship of mutual respect"). This goal is undermined when a federal court imposes on a state a legal argument that the state first advanced but then affirmatively withdrew.[1]

B.

In the appeal before this court, the State of Maryland reversed course and decided to aggressively invoke the defense of sovereign immunity. When asked at oral argument, counsel for the state unequivocally stated that Maryland was invoking its sovereign immunity as a defense to Montgomery's suit. This assertion was followed by a letter which confirmed, for the record, that "the State appellees assert that the Eleventh Amendment bars the plaintiff's claim filed

_____

[1] We do not, of course, address the propriety of sua sponte consideration of Eleventh Amendment defenses which the state has not raised. See, e.g., Higgins v. Mississippi, 217 F.3d 951, 954 (7th Cir. 2000) (affirming the dismissal of a pro se prisoner suit on Eleventh Amendment grounds, even though the state did not respond, because doing so protected the state from frivolous federal litigation and served the "interest in maintaining harmonious relations between the states and the federal government") (internal quotations omitted). Such a situation does not reflect the same affront to state prerogatives as consideration of a defense which the state has affirmatively and unequivocally withdrawn.

4

under the Family Medical Leave Act." Because Maryland has pursued in this litigation what might be described as an erratic approach to its own Eleventh Amendment defense, we address whether this court has the discretion to consider Maryland's assertion of immunity even though the Attorney General attempted to withdraw it below. We conclude that we do have discretion, and that there is a substantial difference between consideration of an Eleventh Amendment defense in the face of an affirmative withdrawal and consideration of the defense in the face of an emphatic assertion of the immunity.

It is axiomatic "that the Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar so that it need not be raised in the trial court." Edelman v. Jordan, 415 U.S. 651, 678 (1974). As the Supreme Court has explained, "[t]he Eleventh Amendment declares a policy and sets forth an explicit limitation on federal judicial power of such compelling force that this Court will consider the issue arising under this Amendment in this case even though urged for the first time in this Court." Ford Motor Co. v. Dep't of Treasury, 323 U.S. 459, 467 (1945).

Further, circuit precedent allows the Eleventh Amendment to be raised for the first time on appeal, regardless of whether the case was resolved on the pleadings, see Suarez Corp. Indus. v. McGraw, 125 F.3d 222 (4th Cir. 1997), or upon a grant of summary judgment, see In re Creative Goldsmiths, Inc., 119 F.3d 1140 (4th Cir. 1997). Indeed, a rule that prevented an appellate court from considering the defense sua sponte would impair the important sovereign interest that the Eleventh Amendment protects. Thus, the fact that Maryland did not assert the immunity defense below does not preclude the state from asserting it now.

Montgomery contends, however, that Maryland's conduct before the district court amounted to a waiver of the sovereign immunity defense. It is undisputed that the defense of sovereign immunity can be waived. See South Carolina Ports, 243 F.3d at 170. And Montgomery claims that by withdrawing the sovereign immunity argument from its motion to dismiss, Maryland waived the defense.

Under Maryland law, however, the Attorney General may not dispositively waive the defense of sovereign immunity on behalf of the

5

state. In <u>Linkenhoker v. Weinberger</u>, 529 F.2d 51 (4th Cir. 1975), this court held that "[s]ince the Maryland courts and legislature have been so explicit in denying the attorney general the power to consent to suits against the state in its own courts, <u>a fortiori</u> he may not consent to suits against the state in federal court which would otherwise be barred by the eleventh amendment." <u>Id.</u> at 54.

<u>Linkenhoker</u> explicitly relied on Maryland law because in <u>Ford</u>, the Supreme Court held that whether executive officers of a state have validly waived the defense of sovereign immunity is determined by looking at "their power under state law to do so." <u>Ford</u>, 323 U.S. at 467. As <u>Linkenhoker</u> acknowledged, the Maryland courts have already resolved this issue of state law. Indeed, in <u>Brohawn & Bros. v. Board of Trustees</u>, 304 A.2d 819 (Md. 1973), Maryland's highest court unequivocally stated that "neither counsel for the State nor any of its agencies may, either by affirmative action or by failure to plead the defense, waive the defense of governmental immunity." <u>Id.</u> at 820 (internal quotations omitted). Rather, suits against the state of Maryland can proceed only "where specific legislative authority" has been given and where the legislature has allocated funds "for the satisfaction of the judgment." <u>Id.</u> It is undisputed that Maryland's legislature has not authorized FMLA suits against the state nor has it allocated funds to satisfy FMLA judgments.

Montgomery acknowledges our holding in <u>Linkenhoker</u> and the underlying <u>Brohawn</u> decision, but claims that these cases have been superceded by subsequent legislative and judicial pronouncements. However, as the United States recognizes in its amicus brief, we relied upon <u>Linkenhoker</u> just four years ago for the proposition that "the Attorney General of Maryland lacks the authority to waive Eleventh Amendment immunity on behalf of the state and its officials." <u>Booth v. Maryland</u>, 112 F.3d 139, 145 n.2 (4th Cir. 1997). And in <u>In re Creative Goldsmiths</u>, this court, examining current Maryland law, held that "[u]nder state law, in Maryland's own courts, `a waiver of sovereign or governmental immunity from suit generally requires that two conditions be met.'" 119 F.3d at 1149 (quoting <u>Kee v. State Highway Administration</u>, 545 A.2d 1312, 1317 (1988))."`First the Legislature must authorize suits for damages and second, there must be provision for the payment of judgments.'" <u>Id.</u> (quoting <u>Kee</u>, 545 A.2d at 1317). As neither condition has been met, under Maryland law an

6

attempt by the Attorney General to waive sovereign immunity in this case cannot be binding on the state.

A failure to address the assertion of immunity would be inappropriate on several fronts. First, there is the important interest of not having private individuals impose a levy on state treasuries without any consent by the state itself. Secondly, there is a risk of judicially enforcing a private right of action which may rest upon an invalid exercise of Congressional authority. Third, Maryland now quite explicitly asserts the Eleventh Amendment defense. Just as it might constitute a disregard of a state's sovereign prerogative to entertain the defense in the face of an unequivocal withdrawal of immunity, so too might we abridge state sovereignty by failing to respect a claim of immunity in the face of the state's unequivocal assertion of it.

III.

Montgomery asserts claims against the State of Maryland, as well as against Warden Robert Kupec and Assistant Warden George Kaloroumakis in both their official and individual capacities. With one exception, the Eleventh Amendment bars all these claims.

A.

First, Montgomery's claims against the state are barred by the Eleventh Amendment. The Eleventh Amendment bars private suits against unconsenting states unless Congress can validly abrogate a state's Eleventh Amendment immunity. See Alden v. Maine, 527 U.S. 706, 755-57 (1999); South Carolina Ports, 243 F.3d at 176-77. In this case, the suit against the state itself may proceed only if Congress properly enacted the FMLA pursuant to its Fourteenth Amendment, § 5 power. See Lizzi v. Alexander, 255 F.3d 128, 134-36 (4th Cir. 2001). In Lizzi, we specifically noted that the FMLA is not "congruent and proportional to the identified Fourteenth Amendment violation -- employment discrimination on the basis of sex." Id. at 134. Consequently, the FMLA "is not a valid abrogation of a state's Eleventh Amendment immunity from suit." Id. at 135. In arriving at this conclusion, this court became the seventh federal court of appeals to hold that the FMLA does not abrogate the sovereign immunity of the states. See, e.g., Townsel v. Missouri, 233 F.3d 1094, 1095 (8th Cir.

7

2000); <u>Chittister v. Department of Cmty. & Econ. Dev.</u>, 226 F.3d 223, 228 (3d Cir. 2000); <u>Kazmier v. Widmann</u>, 225 F.3d 519, 526 (5th Cir. 2000); <u>Sims v. University of Cincinnati</u>, 219 F.3d 559, 566 (6th Cir. 2000); <u>Hale v. Mann</u>, 219 F.3d 61, 69 (2d Cir. 2000); <u>Garrett v. University of Ala.</u>, 193 F.3d 1214, 1219 (11th Cir. 1999), <u>rev'd on other grounds sub nom. Board of Trustees v. Garrett</u>, 121 S. Ct. 955, 961, 968 (2000). Because the FMLA does not validly abrogate Maryland's Eleventh Amendment immunity, the claims against the state must be dismissed.

Second, the Eleventh Amendment bars Montgomery's claims against Kupec and Kaloroumakis for retroactive relief in their official capacities. "The Eleventh Amendment bars a suit against state officials when `the state is the real, substantial party in interest.'" <u>Pennhurst State School & Hosp. v. Halderman</u>, 465 U.S. 89, 101 (1984) (quoting <u>Ford</u>, 323 U.S. at 464). Whether the claim be legal or equitable in nature, a private plaintiff cannot receive retrospective relief from state officers sued in their official capacities. <u>See Edelman v. Jordan</u>, 415 U.S. at 666-69; <u>Lizzi</u>, 255 F.3d at 136. Thus the Eleventh Amendment bars suits by private plaintiffs for backpay and other forms of retroactive relief that are in reality claims against the state itself. <u>See Pennhurst</u>, 465 U.S. at 101, n.11; <u>Edelman</u>, 415 U.S. at 666-69. These types of actions can only be official capacity suits. Consequently, Montgomery's claims against the individual supervisors in their official capacities for retroactive relief must be dismissed.

Third, Montgomery's claims against Kupec and Kaloroumakis in their individual capacities must be dismissed as well. Normally, of course, the Eleventh Amendment does not bar claims by private plaintiffs against individual officers in their individual capacities. <u>See Hafer v. Melo</u>, 502 U.S. 21, 28-29 (1991). But this court has recently held in <u>Lizzi</u> that the state is the real party in interest when an official is sued for damages for official acts under the FMLA. <u>Lizzi</u>, 255 F.3d at 136-38. We based this conclusion in large part on the fact that private plaintiffs "would easily be able to evade the Eleventh Amendment prohibition against suing a state merely by naming the individual supervisor as the employer." <u>Id.</u> at 137. A rule permitting this would undermine recent Supreme Court decisions such as <u>Board of Trustees of the University of Alabama v. Garrett</u>, 121 S. Ct. 955

8

(2001), <u>Kimel v. Florida Board of Regents</u>, 528 U.S. 62 (2000), and <u>Seminole Tribe of Fla. v. Florida</u>, 517 U.S. 44 (1996). <u>Lizzi</u>, 255 F.3d at 137-38. Indeed, the Seventh Circuit is in accord with our holding in <u>Lizzi</u> that if a statute treats an individual state employee as the employer, the real party in interest is in reality the state itself. <u>See Luder v. Endicott</u>, 253 F.3d 1020, 1022-23 (7th Cir. 2001) ("[A] suit nominally against state employees in their individual capacities that demonstrably has the identical effect as a suit against the state is, we think, barred. Any other position would be completely unrealistic and would make a mockery of the Supreme Court's heightened sensitivity to state prerogatives."). In this case, Montgomery's FMLA claims against the supervisors in their individual capacities make clear "that the state is the real party in interest." <u>Lizzi</u>, 255 F.3d at 136. Thus, the state's Eleventh Amendment immunity transfers to these individual capacity claims as well.

Moreover, even if Montgomery's claim for damages could some-how survive the sovereign immunity defense, dismissal would still be proper because she has failed to state a claim upon which relief can be granted. The damages provision of the FMLA limits recovery to "any wages, salary, employment benefits, or other compensation denied or lost" on account of the violation. 29 U.S.C. § 2617(a)(1)(A)(i)(I). In the event that no wages, salary, or other compensation are lost, damages are limited to "any actual monetary losses sustained by the employee . . . such as the cost of providing care." <u>Id.</u> § 2617(a)(1)(A)(i)(II).

Montgomery has not alleged that she suffered actual monetary damages, either in lost wages or in the cost of providing care. Rather, her demand for monetary relief appears to be rooted solely in her claim for emotional damages. The FMLA text nowhere provides, however, for recovery of damages for emotional distress. <u>See Settle v. S.W. Rodgers, Co.</u>, 998 F. Supp. 657, 665-66 (E.D. Va. 1998), <u>aff'd</u> 182 F.3d 909 (4th Cir. 1999). Thus, Montgomery's suit for damages against Kupec and Kaloroumakis was properly dismissed even absent the Eleventh Amendment bar.

B.

The only remaining claim against the individual supervisors in their official capacities is Montgomery's claim for reinstatement to

9

her former position. This claim can proceed because Montgomery's complaint alleges an ongoing violation of federal law. See Ex parte Young, 209 U.S. 123 (1908); Edelman, 415 U.S. at 664; South Carolina Ports, 243 F.3d at 170. The FMLA requires employers to restore an employee returning from FMLA leave to either the same position or "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1)(A)-(B). The regulation defining an equivalent position focuses on the factors of equivalent pay, equivalent benefits, and equivalent terms and conditions of employment. 29 C.F.R. § 825.215 (2000). Equivalent terms and conditions of employment, however, do not require equivalence with respect to "the de minimis or intangible, unmeasurable aspects of the job." Id. at § 825.215(f).

Montgomery's complaint focuses on precisely the sorts of de minimis, intangible, and unmeasurable aspects of a job that the regulations specifically exclude. For example, she contends that her duties formerly were "truly administrative," but now are "the simplest, most menial of clerical functions: answering the phone, taking messages, typing simple correspondence, and the like." Moreover, she claims that while she used to have "her own work area," now she must work in a "room shared with another employee." Finally, she contends that she has diminished job security.

Montgomery concedes, however, that her pay grade and increment level remained the same. The record reflects that both before and after her leave, Montgomery was classified as an "Administrative Aide Stenographer" by the Maryland State Personnel Management System. She also received a four percent raise within two months of being transferred. And since Montgomery's transfer did not require a change in classification, she has not lost any job security. Cf. Hampton v. Univ. of Md., 674 A.2d 145, 150 (Md. App. 1996). As the Executive Director of the Human Resources Services Division of the Department of Public Safety and Correctional Services explained:

> Ms. Montgomery is no more, and no less, subject to adverse action by the Maryland State Personnel Management System now, as assigned to the Maintenance Department at ECI, than she was when she was formerly assigned to the Warden's office at ECI. Her employment rights within the

10

> [system] . . . have not changed with her reassignment from
> the Warden's office to the Maintenance Department.

Montgomery's other complaints, such as the alleged reduction in the complexity of her tasks and the sharing of work space, also fall within the excluded de minimis category. The difference between "truly administrative" tasks and "answering the phone, taking messages, typing simple correspondence, and the like" is not of sufficient magnitude, especially given the equivalent pay grade, increment level, and administrative classification, to constitute an FMLA violation. And the difference between having one's own work space and having to share space with one other person is not of such import as to implicate the protections of the governing federal law. In sum, Montgomery's claim for reinstatement was properly dismissed.[2]

IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

_____

[2] Montgomery is likewise not entitled to injunctive relief because her complaint demonstrates that her change in status was not related to her assertion of her rights under the Family and Medical Leave Act. According to her own summary of her complaint, the Defendants transferred her "to retaliate against her for filing a grievance and otherwise complaining of her work conditions." As it is evident that Montgomery would have been transferred even if she had not taken medical leave, she has no right to be returned to her pre-leave position. See 29 C.F.R. §§ 825.216(a), 825.312(d) (2000).

11