674 A.2d 145

Chonita L. HAMPTON

v.

UNIVERSITY OF MARYLAND AT BALTIMORE.

No. 1154, Sept.Term, 1995.

Court of Special Appeals of Maryland.

April 3, 1996.

David H. Greenberg (Spahn, Harvis, Greenberg & Broida, John G. Koenig, Jr. and Robinson & Koenig, on the brief), Columbia, for Appellant.

Sara Slaff, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General on the brief), Baltimore, for Appellee.

Argued before FISCHER, CATHELL and HOLLANDER, JJ.

CATHELL, Judge.

Chonita L. Hampton, appellant, was employed as an Office Secretary III by the University of Maryland at Baltimore (UMAB), appellee, commencing September 21, 1993. At that time, appellant began a six-month probationary period. UMAB notified appellant, on March 21, 1994, that her initial probationary period was being extended for an additional six months. On June 20, 1994, appellant was notified that her employment was being terminated. Appellant filed a timely appeal of UMAB's decision with the Office of Administrative Hearings (OAH). At the hearing thereon, appellant moved to dismiss UMAB's rejection on probation, arguing that her probation had ended on March 20, 1994, and, thus, she was no longer on probation when discharged. In its Final Decision, the Administrative Law Judge (ALJ) granted appellant's motion to dismiss and denied UMAB's proposed rejection on probation. On appeal to the Circuit Court for Baltimore City (Caplan, J., presiding), finding that the ALJ's conclusions were not supported by substantial evidence, the court reversed the ALJ's decision.

In this appeal from the judgment of the circuit court, appellant presents the following issues:

1. Whether there was sufficient evidence presented at the Administrative Law Hearing to support the Administrative Law Judge's decision[.]

2. Whether the "six-month" probationary period for a University of [Maryland] classified employee in this case ended on a Sunday or on the next business day, Monday[.]

3. Whether an employee waives any complaint regarding a personnel action if no grievance is filed with[in] 30 days of the personnel action, as required by statute[.]

We hold that the ALJ's decision was affected by an error of law—namely, the failure to apply Maryland Code (1957, 1995 Repl.Vol.), Art. 94, § 2 to compute the dates of appellant's probationary period. Accordingly, we shall affirm the reversal of the ALJ's decision by the circuit court. Our decision makes discussion of appellant's first issue unnecessary. Appellant's third issue is a statement, not an allegation of error. This issue was originally presented to the ALJ by UMAB, not appellant. The ALJ found for appellant on other grounds and did not resolve that issue in its Final Decision. Thus, as to it, there appears to be nothing for us to review. In any event, we perceive no error on the part of the circuit court.

### Factual and Procedural Background

Appellant was hired as an Office Secretary III in the Office of the Dean of the School of Social Work at UMAB on September 21, 1993. As an employee of the University of Maryland system, appellant was a classified state employee, Md.Code (1978, 1992 Repl.Vol., 1995 Supp.), § 12–111(b) of the Education Article, and, pursuant to Maryland Code (1993), §§ 4–401, 4–403 of the State Personnel and Pensions Article (SP), appellant was placed on an initial probation period of six months,[1] which, at UMAB's election, could be extended for an additional six months.

On Monday, March 21, 1994, appellant was notified in writing that her initial probationary period was being extended for another six months, through September 21, 1994. On the written notification, which appellant signed, she noted that

---

1. In her brief, appellant states that she was employed by the University of Maryland system for twenty years before being reassigned to the position at the School of Social Work from which she was terminated. Under Maryland Code (1993), § 4–401 of the State Personnel and Pensions Article, "[a]n employee shall be placed on probation when the employee is *first appointed* to the classified service." (Emphasis added.) Thus, it is unclear in the first instance why appellant was placed on probation by UMAB. In any event, appellant did not challenge her placement on probation when she began at UMAB, only whether she was properly rejected during its pendency, and, therefore, any issue in this regard has been waived.

she disagreed with the decision to extend her probation. Appellant did not, however, file a formal written grievance challenging that decision.

On June 20, 1994, appellant was notified in writing that she was being discharged during her probationary period based upon her inability to perform the essential duties and responsibilities of her position, to be effective July 8, 1994. Appellant filed a grievance with UMAB on June 23, 1994. She thereafter filed an appeal with OAH.

At the administrative hearing, neither party presented testimony or argument regarding the propriety of appellant's dismissal. Instead, appellant moved for dismissal of UMAB's rejection on probation on the grounds that her probation had ended on March 20, 1994, and, therefore, she was no longer on probation on June 20, 1994, when UMAB dismissed her. UMAB opposed appellant's motion, contending that it had validly extended appellant's probationary period on March 21, 1994. UMAB argued that this procedural issue was not properly before the ALJ because appellant failed to file a timely grievance following the extension of her probation. (As we have indicated, we shall not address this issue.)

The ALJ found that appellant was hired on September 21, 1993, and, therefore, her six-month probationary period expired on March 20, 1994, although that day was a Sunday. The ALJ concluded, consequently, that the attempt to extend appellant's probationary period on Monday, March 21, 1994 was ineffectual. Thus, according to the ALJ, because appellant became a permanent state employee "as of the close of business on March 20, 1994," UMAB's attempt to reject her on probation was ineffective. The ALJ's decision did not address UMAB's waiver argument.[2]

---

2. Because this issue will most certainly arise again, we note that Maryland Code (1978, 1992 Repl.Vol., 1995 Supp.), § 13–1A–03(b)(1) of the Education Article does not require that a grievance be in writing: "An aggrieved employee ... *may* present the grievance in writing ... for formal consideration." Thus, whether an employee has in fact

Following an unsuccessful motion for reconsideration, UMAB appealed to the Circuit Court for Baltimore City. The circuit court found that the ALJ had committed reversible error in two respects: first, by failing to consider the issue presented to it by UMAB as to whether appellant had waived her right to appeal by failing to file a grievance regarding the extension of her probation when the probationary period was extended; and, second, by finding that appellant's probationary period had expired on a Sunday, rather than extending to the next business day.

Appellant has filed a timely appeal therefrom.

## Standard of Review

Judicial review of an administrative agency's decision is authorized by Maryland Code (1984, 1995 Repl.Vol.), § 10–222 of the State Government Article (SG). Under subsection (h), when exercising such review, the court may:

(1) remand the case for further proceedings;

(2) affirm the final decision; or

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:

(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of the final decision maker;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

---

presented an employer with a timely grievance is a question of fact that must be passed upon first by the administrative agency, *i.e.,* the ALJ.

(vi) is arbitrary or capricious.

In general,

[a] court's role is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law.

*United Parcel Serv., Inc. v. People's Counsel,* 336 Md. 569, 577, 650 A.2d 226 (1994); *Ward v. Department of Pub. Safety & Correctional Servs.,* 339 Md. 343, 347, 663 A.2d 66 (1995). We must determine in each case whether the agency's decision is "in accordance with the law or whether it is arbitrary, illegal, and capricious." *Moseman v. County Council,* 99 Md.App. 258, 262, 636 A.2d 499, *cert. denied,* 335 Md. 229, 643 A.2d 383 (1994); *Curry v. Department of Pub. Safety & Correctional Servs.,* 102 Md.App. 620, 626–27, 651 A.2d 390 (1994), *cert. denied,* 338 Md. 252, 657 A.2d 1182 (1995).

Our review of the agency's factual findings entails only an appraisal and evaluation of the agency's fact-finding and not an independent decision on the evidence. *Anderson v. Department of Pub. Safety & Correctional Servs.,* 330 Md. 187, 212, 623 A.2d 198 (1993). This examination seeks to find the substantiality of the evidence. "That is to say, a reviewing court, be it a circuit court or an appellate court, shall apply the substantial evidence test to the final decisions of an administrative agency...." *Baltimore Lutheran High Sch. Ass'n v. Employment Sec. Admin.,* 302 Md. 649, 662, 490 A.2d 701 (1985); *Anderson,* 330 Md. at 212, 623 A.2d 198; *Bulluck v. Pelham Wood Apts.,* 283 Md. 505, 511–13, 390 A.2d 1119 (1978); *Moseman,* 99 Md.App. at 262, 636 A.2d 499. In this context, " '[s]ubstantial evidence,' as the test for reviewing factual findings of administrative agencies, has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]' " *Bulluck,* 283 Md. at 512, 390 A.2d 1119 (quoting *Snowden v. Mayor of Baltimore,* 224 Md. 443, 448, 168 A.2d 390 (1961)). In terms of fact-finding, we must emphasize that under no circumstances may we substitute our judgment for that of the agency. *Anderson,* 330 Md. at 212, 623 A.2d 198. On the other hand, "[w]hen reviewing issues of law, ... the court's review is expansive

and it may substitute its judgment for that of the agency." *Curry*, 102 Md.App. at 627, 651 A.2d 390; *Columbia Rd. Citizens' Ass'n v. Montgomery County*, 98 Md.App. 695, 698, 635 A.2d 30 (1994).

## Appellant's Probationary Status

Appellant contends that her probation ended on Sunday, March 20, 1994, and, therefore, when she was terminated, on June 20, 1994, she was no longer a probationary employee and could only be terminated for cause. We disagree. Two separate provisions of a statute relating to the computation of time dictate otherwise. We shall first address appellant's primary contention.

■ In support of her position, appellant cites SP § 4–401, which states that "[a]n employee shall be placed on probation when the employee is first appointed to the classified service." In conjunction with this section, appellant cites *Yingling v. Smith*, 259 Md. 260, 269 A.2d 612 (1970), where the Court of Appeals applied Maryland Code (1957, 1995 Repl.Vol.), Art. 94, § 2 to determine what constitutes a six-month period of time for statute of limitations purposes.

Article 94, § 2 states, in appropriate part:

> In computing any period of time prescribed or allowed by any applicable statute, the day of the act, event, or default, after which the designated period of time begins to run is not to be included. The last day of the period so computed is to be included unless: (1) It is a Sunday or a legal holiday, in which event the period runs until the end of the next day, which is neither a Sunday or a holiday[.]

The purpose of this section "was to establish 'a *uniform* method of computing any period of time prescribed or allowed by the rules of any court, or by order of Court, or by any applicable statute.'" *Equitable Life Assurance Soc'y of the United States v. Jalowsky*, 306 Md. 257, 262, 508 A.2d 137 (1986). A uniform procedure for computing statutory periods is equitable for two reasons. "First, a set method of time computation brings a degree of certainty to the law. Second,

by excluding the first day and counting from the first whole day following the event, a party will not be prejudiced if the triggering event occurs toward the end of the day." *Id.* at 265, 508 A.2d 137.

■ In *Yingling,* "[t]he narrow legal question presented [to the Court of Appeals] ... [was] whether or not a bill of complaint filed September 20, 1968, satisfies the statutory requirement of 'filing within six calendar months after' the appointment of an executor on March 19, 1968." 259 Md. at 261, 269 A.2d 612. Applying Art. 94, § 2, the Court excluded March 19, 1968, the day the executor was appointed, from the measuring of the prescribed period because the day of the event that triggers the statutory period is "not to be included." The Court held "that a calendar month is the period of time running from the beginning of a certain numbered day up to, *but not including,* the corresponding numbered day of the next month." *Id.* at 263, 269 A.2d 612. Using this formula, the Court held that the six-month limitations period ran from March 20, 1968 through September 19, 1968. *Id.*

Applying Art. 94, § 2 and *Yingling* to the case *sub judice,* we hold that, because appellant was hired by UMAB on September 21, 1993, her initial six-month probationary period commenced on the next full day, September 22, 1993, and ended, therefore, on March 21, 1994, which is the day her probation was extended. Under this statute, therefore, when UMAB extended appellant's probation on March 21, 1994, it did so properly.

In her brief, after relying upon *Yingling,* a case that itself relied heavily upon Art. 94, § 2, and applying the formula it sets forth to her situation, appellant goes on to argue that the language of SP §§ 4–401 and 4–403 mandates that Art. 94, § 2 is not to be applied to the instant case. She contends that

State Personnel and Pensions Article, Section 4–401 ... clearly mandates that a State employee is placed on probation when that employee is *first* appointed. The statute dictates that an employee is placed on probation on his or her first day of work. . . . To not count this day as Day 1 of

the probation period defies logic and the statute's intent. Using the counting formula detailed in *Yingling*, and assuming that the date of appointment for Hampton, namely September 21, 1993, is the first day of the probation period, then her six month probation period ended not on March 21, 1994, but on March 20, 1994. Even if March 20, 1994 was a Sunday, the day should be included in the six month period. To permit the extension of her probation to the next day not a Sunday or holiday in accordance with Article 94, Section 2 would be tantamount to stating that employees must serve a probation period of six months and one day or six months and two days.

■ Appellant's arguments are unpersuasive. First, appellant's argument is contradictory: she relies heavily upon a case, *Yingling*, that was based upon a particular statutory section, Art. 94, § 2, but then argues that we may only selectively apply those portions of the statute that aid her argument. Simply stated, appellant cannot have it both ways. Second, SP § 4–401 states that an employee is placed on probation when *first appointed* to the classified service; the plain statutory language does not command that the first day of work is also the first day of probation. Third, SP § 4–403 provides that an employee's initial probationary period lasts for six months and may be extended for one additional six-month period. Both SP § 4–403 and Art. 94, § 2 relate, in part, to the same subject matter—time. Section 4–403 of the State Personnel and Pensions Article furnishes the length of the period; Art. 94, § 2 controls when the counting commences and ends. The Legislature "is presumed to have had, and acted with respect to, full knowledge and information as to prior and existing law and legislation on the subject of the statute and the policy of the prior law." *Police Comm'r v. Dowling*, 281 Md. 412, 419, 379 A.2d 1007 (1977). Hence, because Art. 94, § 2 was enacted prior to SP § 4–403, we presume that the Legislature was not only aware that Art. 94, § 2 would be used to compute the time period of SP § 4–403 when it did not specify otherwise, but approved of its use. *See Equitable Life*, 306 Md. at 263, 508 A.2d 137. Finally, appel-

lant's six-months-and-one-day argument "is of no import for it could be asserted each time a statute contains a notice provision and Art. 94, § 2 is applied to compute the time period. The short answer is that Art. 94, § 2's exclusion of 'the day of the act, event, or default' represents the uniform statutory policy of this State." *Id.* at 265, 508 A.2d 137 (applying Art. 94, § 2 and holding that proper method for computing commencement date of two-year period delineated in incontestability provision of life insurance policy was to exclude date of policy issuance and commence counting from first full day following issuance of policy); *see also Fischer v. Fischer,* 193 Md. 501, 505–06, 69 A.2d 51 (1949); *Durham v. Walters,* 59 Md.App. 1, 6–7, 474 A.2d 523 (1984) (applying Art. 94, § 2 to six-month period to file a caveat against a will). We also note the opinion of the Attorney General:

> Giving effect to the provisions of Section 2 of Article 94 ... the one year period allowed for claim of the prize of a winning State lottery ticket commences on the day following the drawing in which the ticket became a winner and runs up to, *but not including,* the correspondingly identified month and day of the next successive year

despite the fact that ticket may be claimed on same day as drawing. 60 Op.Att'y Gen. 439 (1975).

Moreover, even if we were to agree with appellant and include September 21, 1993 within her probationary period (which we do not), the ALJ's conclusion that appellant's probationary period expired on Sunday, March 20, 1994, because it began on September 21, 1993, rather than September 22, 1993, is also erroneous as a matter of law because the last day would then fall on a Sunday. Article 94, § 2 provides that, when that occurs, the period is extended to the following business day: "The last day of the period ... is to be included unless: (1) It is a Sunday or legal holiday, in which event the period runs until the end of the next day, which is neither a Sunday or a legal holiday." That next day was Monday, March 21, 1994. *See, e.g., D & Y, Inc. v. Winston,* 320 Md. 534, 536–37 & n. 1, 578 A.2d 1177 (1990) (applying Art. 94, § 2 and finding that purchaser under land sales contract, who had

fifteen days from August 31, 1984 within which to record deed, was one day late when he recorded on Tuesday, September 18, 1984, because September 15th and 16th were a Saturday and Sunday and, therefore, time for recording was extended to the next business day that the clerk's office was open, Monday, September 17, 1984); *see also* Md.Rule 1–203(a) ("In computing any period of time prescribed by ... any applicable statute, ... [t]he last day of the period ... is included unless: (1) it is a Saturday, Sunday, or legal holiday, in which event the period runs until the end of the next day" on which business is conducted.); *In re Stephen J.*, 48 Md.App. 736, 738, 429 A.2d 307 (1981) (Where rule required juvenile adjudicatory hearing to be held within thirty days from filing of petition, the dismissal of the petition because hearing was held on thirty-first day after filing of petition was improper where thirtieth day was a Sunday.).

Additionally, UMAB has proffered that it is its established policy to calculate probationary periods on a point-to-point basis. In other words, under its policy, UMAB calculated a month to be the period beginning on a particular numbered day and running up to *and including* the corresponding numbered day of the following month—*i.e.,* UMAB calculated appellant's six-month probationary period to be from September 21, 1993 through and including March 21, 1994. Thus, UMAB, relying on its own established policy and procedure in calculating appellant's probationary period, determined that it had until the close of business on Monday, March 21, 1994 to inform appellant that her probation period was being extended.

We have frequently held that an administrative agency must abide by its own rules, and when an agency fails to follow its rules, its actions are invalid. *See, e.g., Kohli v. LOOC, Inc.,* 103 Md.App. 694, 718, 654 A.2d 922 (1995); *Board of School Comm'rs v. James,* 96 Md.App. 401, 421, 625 A.2d 361, *cert. denied,* 332 Md. 381, 631 A.2d 451, 452 (1993). We recognize, of course, that to the extent UMAB's policy is not in compliance with the methodology for such calculations set forth by the Court of Appeals in *Yingling,* UMAB's policy is not

condoned. However, to the extent that UMAB was required to follow its established rules and did so in this case, its conclusion that, under its point-to-point policy, it had until March 21, 1994 to extend appellant's probation is supportable.

Finally, according to another of UMAB's personnel regulations, "[a] request for extension of probation must be received in the institution Personnel Department prior to the probation completion date in order to be considered." Appellant contends that, based upon this provision, even if her probationary period expired on March 21, 1994, UMAB had to inform her prior to that date—*i.e.,* by March 20, 1994—that it was extending her probation. Appellant's contention is, however, without merit for several reasons. Principally, we note, this provision does not contemplate that any notification whatsoever must be made to the employee. The regulation does no more than control the internal transmission of a request to extend probation from the employee's supervisor to the personnel office. Furthermore, in order for an employee's probation to be extended, the employer must act prior to the expiration of the probationary period; once the period has expired there is, logically, nothing left to be extended. Thus, the employer must act "prior to the probation completion date"—that is, while the employee is still on probation—in order to extend the probation. In this regard, UMAB's regulation serves to ensure that actions to extend an employee's probationary period are taken prior to the expiration of that period. Lastly, even if we were to agree with appellant that, under this provision, UMAB had to inform her one full day prior to the expiration of her probation period that it was extending said period (which we do not), we would still not be inclined to hold that UMAB had to act on a Sunday, as opposed to having the period extended by operation of law to the following business day pursuant to the statutes and Maryland Rule we have elsewhere discussed.

In conclusion, construing SP § 4–403 in harmony with Art. 94, § 2, leads to the result that UMAB had until Monday, March 21, 1994 to inform appellant that her probation was

being extended.[3]   Although it would have been prudent for UMAB to have notified appellant that her probation was going to be extended prior to the date upon which the six-month period would run, we hold that the ALJ erred when he ruled that appellant's probationary period expired on Sunday, March 20, 1994.   Through misinterpretation and misapplication of Art. 94, § 2, this decision was erroneous as a matter of law, and, therefore, the ALJ's decision is affected by an error of law.   Pursuant to SG § 10–222(f), the ALJ's decision must be reversed, and, correspondingly, the judgment of the circuit court affirmed.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTI-MORE CITY AFFIRMED; COSTS TO BE PAID BY AP-PELLANT.**

---

**3.**   An application of Md.Rule 1–203(a) leads to the same result.