**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 05-2087

CARLOS G. CSICSMANN,

Plaintiff - Appellant,

versus

MICHAEL S. SALLADA, JR.; CGI-AMS, INCORPORATED, formerly known as American Management Systems, Incorporated,

Defendants - Appellees.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Gerald Bruce Lee, District Judge. (CA-04-1094-GBL)

Submitted: August 21, 2006          Decided: December 12, 2006

Before SHEDD and DUNCAN, Circuit Judges, and Richard L. VOORHEES, United States District Judge for the Western District of North Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion. Judge Voorhees wrote a separate opinion dissenting in part.

Adam A. Carter, Robert S. Oswald, NOTO & OSWALD, P.C., Washington, D.C., for Appellant. Christine N. Kearns, PILLSBURY, WINTHROP, SHAW, PITTMAN, L.L.P., Washington, D.C., for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellant Carlos Csicsmann ("Csicsmann"), an information technology worker, took leave under the Family and Medical Leave Act, 29 U.S.C. § 2614(a)(3)(B) ("FMLA") after having hip surgery. Following his return to work, Csicsmann brought this action against CGI-AMS, Inc. ("CGI-AMS") and co-worker Michael S. Sallada, Jr. ("Sallada") (together "Appellees"), alleging that the Appellees: (1) failed to restore him to an "equivalent position" under the FMLA; (2) "regard[ed] him as disabled" in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12102(2)(C) ("ADA"); (3) failed to accommodate him under the ADA; and (4) retaliated against him for engaging in "protected activity" under the FMLA, Title VII, 42 U.S.C. § 2000e-3(a), and the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132 ("ERISA"). The parties filed competing motions for summary judgment, and the district court entered judgment in favor of Appellees on all claims. Csicsmann appeals the district court's disposition. For the reasons that follow, we affirm.

## I.

Given the procedural posture of this case, we summarize the facts in the light most favorable to Csicsmann. <u>Evans v. Techs Application</u>, 80 F.3d 954, 958 (4th Cir. 1996). In November 2003, Csicsmann was Server Group Manager in the Information Technology

2

Server Group at American Management Systems, Inc. ("AMS").[1]  He directly reported to Carl Warner ("Warner"), who in turn reported to the Vice President of Information Technology, Don Hirsch ("Hirsch"). Appellee Sallada also reported to Hirsch but did not directly supervise Csicsmann.  In early November 2003, Csicsmann and Sallada engaged in a heated argument when some AMS offices lost computer connectivity. Csicsmann allegedly reported the incident to Vice President Hirsch and complained that Sallada "badger[ed] certain types of people." J.A. 328.

Soon after the argument with Sallada, in December 2003, Csicsmann took FMLA leave to have hip surgery.  He was out of the office until February 25, 2004.  After his return to AMS, Csicsmann learned that his position had been eliminated and that he would be working on the Disaster Recovery Project.  Csicsmann's supervisors assert that they designed the Disaster Recovery position specifically to suit his "vast skill set" and that they assigned him the high-level responsibility of developing a disaster recovery plan, as well as creating processes for recovering corporate IT infrastructure in the case of a disaster.  Csicsmann's salary, title, bonus eligibility, health care, and retirement benefits remained the same as in his prior position, although his job responsibilities varied.

---

[1]AMS is pre-merger incarnation of appellee CGI-AMS. CGI and AMS merged in March 2004.

On March 4, 2004, Csicsmann informed his supervisors and the AMS Human Resources department that his hip was increasingly painful and inquired about adjusting his work schedule and taking long-term disability. Human Resources provided Csicsmann with an application for long-term disability status which he never submitted.

On March 10, 2004, AMS announced its impending merger with CGI Group Inc., and a CGI employee was tasked with eliminating 10% of the positions in the IT department in which Csicsmann worked. On May 5, 2004, Csicsmann's position was selected for termination. By the end of 2004, all of the duties previously handled by Csicsmann's IT department were transferred to CGI facilities in Toronto and all of the Server Group positions at AMS were eliminated. Csicsmann has held other employment since his termination.

II.

After his termination, Csicsmann filed suit challenging AMS's conduct towards him in several respects. He argued that AMS retaliated and discriminated against him because he took FMLA leave and complained about Sallada, and that AMS viewed him as disabled and improperly denied him a reasonable accommodation under the ADA. Csicsmann claimed that his new position was less prestigious and had different responsibilities than the old one. According to

4

Csicsmann it was therefore not an equivalent position for FMLA purposes, and his assignment to it constituted an adverse employment action.

The district court rejected all of Csicsmann's claims. The court found that Csicsmann's new position was equivalent under the FMLA and that the assignment to it did not constitute an adverse employment action. The district court found that there was a legitimate business reason for eliminating Csicsmann's original position and that it was not eliminated in retaliation against Csicsmann for taking FMLA leave or for engaging in any protected activity under ERISA or Title VII. Finally, the court found that Csicsmann was not regarded as disabled under the ADA and therefore he had no claim for an accommodation.

On appeal Csicsmann challenges each of these conclusions, which we consider in turn. This court reviews the district court's grant of summary judgment de novo. Med. Waste Assocs. v. Mayor of Baltimore, 966 F.2d 148, 150 (4th Cir. 1992). We do so bearing in mind that summary judgment is appropriate only when there is no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1996).

III.

A.

We first consider whether the district court erred in granting the Appellees summary judgment on Csicsmann's FMLA claim. Because we agree that Csicsmann received an "equivalent position" upon his return to work, we find no error.

The FMLA allows an employee who takes qualifying leave to be restored either to his original, pre-leave position or to "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614 (a) (1) (2000). We recently explained that an employee does not have an absolute entitlement to restoration of his pre-leave position after taking FMLA leave. See Yashenko v. Harrah's NC Casino, Co., 446 F.3d 541, 549 (4th Cir. 2006). Further, federal regulations clarify that the requirement of equivalent terms and conditions of employment "does not extend to de minimis or intangible, unmeasurable aspects of the job." 29 C.F.R. § 825.215. Examples of terms and conditions that should be equivalent are the employee's work schedule or his place of work: physical and temporal aspects of the job. Id.

Here, Csicsmann argues that the new position was not equivalent to the one eliminated while he was on leave. He further argues that summary judgment is per se inappropriate because equivalency is a fact-dependent issue for the jury. These

6

arguments fail, however, because even viewing the facts in the light most favorable to him it is undisputed that his salary, title, bonus eligibility, health care, and retirement benefits remained unchanged in his new position. He continued to work the same schedule at the same physical office. Although Csicsmann argues that the new position was less prestigious and less visible than the pre-leave position, these are the very intangible aspects of the position appropriately excluded from an equivalency determination. <u>See</u> 29 C.F.R. § 825.215. The concrete and measurable aspects of Csicsmann's positions were exactly the same.[2] We therefore hold that AMS restored Csicsmann to an equivalent position under the FMLA.[3]

---

[2]The dissent takes issue with our determination that Csicsmann's new position was an equivalent one. We note intially that Csicsmann was not <u>entitled</u> to any position: AMS had no obligation to create a new one for him, but did so anyway. Given that and the fact, as we discuss below, that the tangible benefits of his position--salary, health benefits, disability benefits, bonus eligibility, retirement benefits, and his title of "Principal"-- remain the same, summary judgment was appropriate under our precedent.

[3]Csicsmann also argues that the new position was ultimately slated for layoff while the pre-leave position was not, which requires us to find that the position was not equivalent under 29 C.F.R. § 825.215. This is unpersuasive. The pre-leave position had already been eliminated when Csicsmann returned to work, and the entire department was eventually closed after the merger with CGI. There is nothing in the record to support his theory that the pre-leave position would have survived.

B.

We next consider whether the district court erred in granting the Appellees summary judgment on Cscicsmann's claim that Sallada "regarded him as disabled" in violation of the ADA. Again, we find no error.

The ADA protects an employee against discrimination by an employer if the employee is "a qualified individual with a disability." Pollard v. High's of Baltimore, Inc., 281 F.3d 462, 467 (4th Cir. 2002) (quoting 42 U.S.C. §§ 12111(2), 12112(a)). A disability under the ADA is "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). We have explained that in order to defeat summary judgment, an employee must show that the employer "mistakenly believe[d] that an actual, nonlimiting impairment substantially limits one of more major life activities." Rhoads v. Fed. Deposit Ins. Corp., 257 F.3d 373, 390 (4th Cir. 2001)(quoting Haulbrook v. Michelin N. Am., Inc., 252 F.3d 696, 704 (4th Cir. 2001)). Proof limited to mere speculation and inferences that an employer believes an employee to be disabled is not enough for the employee to survive summary judgment. See Haulbrook, 252 F.3d at 704 (affirming summary judgment for the employer because plaintiff failed to present any concrete evidence that the employer regarded him as disabled).

8

Csicsmann argues that he is protected by the ADA under part (C) of the definition of "disabled," see 42 U.S.C. § 12102(2), specifically that Sallada regarded him as disabled because he had difficulty walking. Csicsmann argues that the reduced walking required in his new position is "indirect proof" of such regard. However, the record reflects no evidence that Csicsmann was put into the different position because Sallada or other executives at AMS felt that he could not perform the duties of his pre-leave job. It is undisputed that the pre-leave position no longer existed: there was no possibility of Csicsmann filling it. Moreover, Sallada had even rated Csicsmann as a strong performer in a performance review, and Csicsmann himself admitted that he did not know what Sallada's opinion was about his ability to walk. Even viewed in the light most favorable to Csicsmann, these allegations do not rise to the level of a genuine issue of material fact. We therefore hold that summary judgment in the Appellee's favor was appropriate.[4]

---

[4]It necessarily follows that summary judgment for the Appellees on Csicsmann's claim that they failed to acommodate his disability as required by the ADA is also appropriate. To claim an accomodation under the ADA, an employee must first show that he is disabled. See Pollard, 281 F.3d at 467 ("[I]n order to come within the ADA's protected class, a plaintiff must first show that she is disabled within the meaning of the Act.") The facts that Csicsmann failed to show that he was regarded as disabled and never argued that he was actually disabled doom his claim for an accommodation as well.

9

C.

We hold that because Csicsmann fails to make out a prima facie case of retaliation under the FMLA, ERISA, or Title VII, the district court's grant of summary judgment to the Appellees on the three retaliation claims was proper.

Our analysis of a retaliation claim under FMLA and ERISA is similar to that under Title VII, requiring as a threshold matter that the employee make out a prima facie case. See Yashenko, 446 F.3d at 550-51 (finding that retaliation analysis under the FMLA follows the Title VII framework); Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 239 (4th Cir. 1991) (finding that retaliation analysis under ERISA follows the Title VII framework). To establish a prima facie case of retaliation, an employee must show that "(1) [he] engaged in protected activity, (2) the employer took adverse employment action against [him], and (3) a causal connection existed between the protected activity and the adverse action." Munday v. Waste Mgmt. of N. Am., Inc., 126 F.3d 239, 242 (4th Cir. 1997) (quoting Ross v. Comm. Satellite Corp., 754 F.2d 355, 365 (4th Cir. 1985)).

For the reasons discussed above, Csicsmann's retaliation claims founder on his inability to show an adverse employment action. As we have explained, finding an adverse employment action when an employer changes an employee's job focuses on metrics like the employee's salary, benefits, and opportunity for promotion.

10

See James v. Booz-Allen & Hamilton, 368 F.3d 371, 376 (4th Cir. 2004). The Supreme Court has recently clarified that to constitute an adverse employment action, the "plaintiff must show that a reasonable employee would have found the challenged action to be materially adverse." Burlington Northern & Santa Fe Rwy. Co. v. White, 126 S. Ct. 2405, 2415 (2006). Before White, "[i]n no case in this circuit have we found an adverse employment action . . . without evidence that the terms, conditions, or benefits of . . . employment were adversely affected." Munday, 126 F.3d at 243; see also Boone v. Goldin, 178 F.3d 253, 255-57 (4th Cir. 1999) (finding that transferring an employee to a new position is not an adverse employment action "absent any decrease in compensation, job title, level of responsibility, or opportunity for promotion" and that these are only factors that should be considered in determining whether an adverse employment action exists). White explains that while factors other than the terms and conditions of employment may be examined in determining whether an adverse employment action occurred, this is still a heavy burden for the plaintiff: the alleged adverse action must be material. See 126 S. Ct. at 2412-15.

Here, Csicsmann argues that both the elimination of his pre-leave position and his placement in the new Disaster Recovery job are adverse employment actions for FMLA and Title VII purposes. This court has never found an affirmative action on facts like

11

these where the terms and conditions of employment remained the same. See Munday, 126 F.3d at 243. As White explains, trivial harm is not enough to constitute an adverse action; rather, the harm must be material. 126 S. Ct. at 2412-15. Cscismann fails to show any material harm here--indeed, he offers only evidence of intangible alleged harms stemming from his preference for his previous position. As an adverse employment action is a requirement for a retaliation claim under FMLA and Title VII, summary judgment to Appellees on these claims was appropriate.

Csicsmann's ERISA arguments are somewhat different: he argues that AMS's final termination of him in May 2004 was an adverse employment action in retaliation against his request for a long-term disability application in March 2004. Even assuming that requesting a long-term disability application is a protected activity, Csicsmann offers no evidence to show that AMS's proffered business reason was pretext for discrimination. See Munday, 126 F.3d at 242 (explaining that an employee must prove that an employer's proffered legitimate business reason for taking the alleged adverse employment action is pretext for discrimination). It is undisputed that AMS-CGI moved the IT department to Toronto and ultimately let go all of the former Server Group workers that Csicsmann worked with. The merger and subsequent reorganization is clearly a legitimate business reason for terminating Csicsmann's

12

employment and he offers no evidence beyond speculation to refute this conclusion.

Because Csicsmann does not meet his burden of proving a prima facie case of retaliation under ERISA, FMLA, or Title VII, we hold that the district court's grant of summary judgment should be affirmed on these counts.

## IV.

Based on the foregoing, it is hereby ordered that the order of the district court is

AFFIRMED.

VOORHEES, District Judge, dissenting in part:

I dissent only with respect to the panel's decision affirming summary judgment in favor of Appellees on Appellant's FMLA "interference" or "entitlement" claim. I concur with the panel majority on all other issues.

The FMLA requires an employer to restore an employee to "the same or an equivalent position with equivalent benefits, pay and other conditions of employment." 29 U.S.C. §§2614(a)(1)(A) and (B); Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541,546 (4th Cir.2006)(§2614(a) prescribes a "substantive floor" for employer's conduct and creates "entitlements for employees")(*internal citations omitted*). Section 825.215(a)of the Code of Federal Regulations defines "equivalent position" and explains:

> An equivalent position is one that is *virtually identical* to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status. It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority.

29 C.F.R. §825.215(a)(*emphasis supplied*). "The requirement that an employee be restored to the same or equivalent job with the same or equivalent pay, benefits and terms and conditions of employment does not extend to *de minimis* or intangible, unmeasurable aspects of the job." 29 C.F.R. §825.215(f).

In light of these criteria, Appellant Csicsmann contends that CIG-AMS violated the FMLA by failing to offer him "equivalent"

14

employment following the elimination of his pre-leave position as Server Group Manager ("SGM"). Csicsmann argues that the facts presented in this case give rise to a jury question and that the district court erred by deciding this issue as a matter of law. As discussed in greater detail below, a review of the record reveals that the differences between the SGM position and the Disaster Recovery ("DR") position are not merely *de minimis*, intangible or unmeasurable. Because a reasonable jury could find that the jobs are not "virtually identical" or "substantially similar" in one or more ways expressly contemplated by the statute, a jury question exists with respect to FMLA equivalency.

The Server Group was responsible for most of AMS's corporate server equipment for all AMS locations in the United States. As Server Group Manager, Csicsmann was tasked with primary responsibility for keeping AMS's servers up and running around-the-clock, three hundred and sixty-five days a year. Csicsmann managed and supervised a team of approximately twenty-four (24) people, was responsible for a multi-million dollar budget, had limited purchasing authority for the Server Group, and reviewed monthly expenditures with AMS's Financial Advisor to the Information Technology department. Csicsmann had partial responsibility for Sarbanes-Oxley compliance and was also the technical lead for corporate disaster recovery planning and implementation.

15

On February 27, 2004, the day after he returned from FMLA leave, Csicsmann was notified that he was being reassigned to DR. After reassignment, Csicsmann retained the same level of compensation, bonus eligibility, health care, and pension benefits. However, Csicsmann presents evidence that his role in DR was much narrower in scope than his role as SGM. It is undisputed that Csicsmann was no longer responsible for overseeing a departmental budget, he had no purchasing authority, he had less contact with the finance department, and had no role in the company's Sarbanes-Oxley compliance. Appellees similarly concede that Csicsmann no longer managed or supervised anyone.

Csicsmann asserts that the DR job was a "made-up job with no real responsibilities associated with it." More importantly, Csicsmann contends that reassignment to the DR position was more akin to a demotion than reinstatement to an equivalent position as prescribed by the FMLA. In addition to the differences in actual duties already noted, viewed in the light most favorable to Csicsmann, the following facts tend to support Appellant's claim: 1) the DR position was never advertised or posted; 2) the new position had no "Job Description" or identifiable duties; 3) historically, DR as a whole was underfunded and had experienced little success; 4) the decision to reassign Csicsmann to DR was a last-minute decision; 5) Csicsmann had no DR job assignments for approximately 2 weeks following the reassignment; and 6)the DR

16

position did not require the skill or effort that the SGM position required.

In addition, the loss of supervisory or managerial authority cannot neatly be classified as *de minimis*, intangible, or unmeasurable. The loss of management or supervisory responsibilities affected Csicsmann's duties in a concrete manner. Csicsmann no longer had any input regarding hiring or firing decisions and was not responsible for performing annual employee evaluations. Contrast the facts here with those presented in Montgomery v. Maryland where this court explained that "[t]he difference between "truly administrative" tasks and "answering the phone, taking messages, typing simple correspondence, and the like" is not of sufficient magnitude . . . to constitute an FMLA violation." Montgomery v. Maryland, 266 F.3d 334, 341 (4th Cir. 2001)("Montgomery I"), *vacated on other grounds*, 535 U.S. 1075 (2002); *But see*, Montgomery v. Maryland, 72 Fed. Appx. 17, **2 (2003)(*unpublished*)(although Montgomery I is not binding, "we are persuaded that our reasoning remains valid")("Montgomery II"). Relief from all supervisory duties would seem to be of greater import than the purported differences in duties previously addressed by this Circuit.

Csicsmann also became one step removed from his pre-leave corporate hierarchal status. Piscottia, formerly Csicsmann's peer in terms of hierarchy of management, avers that he did not consider

17

Csicsmann's transfer to be a lateral move. Likewise, Carl Warner, Csicsmann's former supervisor, was under the impression that Csicsmann would be heading up the DR project and that Piscottia would be reporting to Csicsmann rather than the other way around. Warner testified via deposition that he would not consider it a lateral move for Csicsmann to begin reporting to Piscottia. Warner also testified that he had concerns that Csicsmann would quit rather than accept the DR position. Warner's testimony tends to show that a reasonable jury could find that the DR position was <u>not</u> equivalent to the SGM position. At minimum, this evidence creates a triable jury issue regarding the equivalency of the DR position.

Moreover, <u>Yashenko</u> does not govern Csicsmann's entitlement claim. <u>Yashenko</u>, 446 F.3d at 546-550("[T]he FMLA provides no absolute right to restoration to a prior employment position.") In <u>Yashenko</u>, this court was not asked to consider the equivalency of a post-leave reassignment because the plaintiff-employee did not pursue any of the then vacant positions after his previous position was eliminated. <u>Yashenko</u>, 446 F.3d at 550. As a result, the court's analysis focused on whether, and under what circumstances, an employee may be entitled to return to the *same position* following FMLA leave. <u>Id.</u> The Court also found, based upon undisputed evidence, that the plaintiff-employee would have been discharged even if he had not taken FMLA leave. <u>Id.</u>, at 550. Thus, <u>Yashenko</u> can be distinguished on multiple grounds.

18

Finally, the fact that Csicsmann's compensation and benefits remained the same is not necessarily determinative. Given the objectives of the FMLA,"the restoration of salary, title, and benefits does not necessarily constitute restoration to the same position within the meaning of 29 U.S.C. §2614(a)(1)(A) when the job duties and essential functions of the newly assigned position are materially different from those of the employee's pre-leave position." Cooper v. Olin Corp., Winchester, 246 F.3d 1083, 1090-92 (8th Cir.2001)(summary judgment improper on FMLA entitlement claim where locomotive engineer was restored to position with same job title, classification, pay, and benefits but limited to office / clerical duties).

For these reasons, I would REVERSE and REMAND on the FMLA entitlement claim only, finding that genuine issues of material fact preclude judgment as a matter of law.

19